**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1946
_____

ALDA IRIS SANTOS GUTIERREZ; M.M.S-G.,
Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A206-712-121, A206-712-122)
Immigration Judge:  Honorable Steven A. Morley

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 5, 2018

Before:  HARDIMAN, KRAUSE, and GREENBERG, *Circuit Judges*

(Opinion filed:  November 7, 2018)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

KRAUSE, *Circuit Judge*.

Petitioner Aldo Iris Santos Gutierrez and her daughter, M.M.S-G., appeal the Board of Immigration of Appeals' decision affirming the Immigration Judge's denial of asylum, withholding of removal, and relief under the Convention Against Torture (CAT). As substantial evidence supports the BIA's decision, we will deny the petition for review.

## I.       Background

Santos, a victim of multiple threats and robberies, lost two brothers to gang violence in Honduras: Jose Levis was murdered in 2004 for refusing to join a gang, while Roberto Carlos was killed seven years later during an apparent robbery.[1]  A gang member used Roberto Carlos's phone to call Santos, threatening to kill her.  Thereafter, a gang member named Christian demanded to have dinner with Santos, but Santos refused. Gang members also threw a letter over the wall surrounding Santos's house, threatening, "You look like your brother, Jose Levis, and we are going to kill you like him." Administrative Record (A.R.) 393.  Santos understood this letter to mean that the gang would murder her if she, like Jose Levis, refused to join the gang.  After receiving the letter, Santos spotted a man manipulating a pistol hidden beneath his shirt as he walked along the street.

---

[1] In his oral decision, the IJ found Santos "largely credible," but then remarked that Santos's credibility was "ultimately . . . somewhat mixed." A.R. 44.  Because neither the IJ nor the BIA relied on the "somewhat mixed" credibility finding to deny her application, we accept Santos's testimony as true and do not consider the propriety of the IJ's credibility determination.  *See Li v. Attorney Gen.*, 400 F.3d 157, 163-64 (3d Cir.

Santos then left Honduras with her daughter M.M.S-G. for the United States, where they were placed in removal proceedings. Santos lodged a timely asylum application, contending she suffered persecution because of her membership in two particular social groups—specifically, her family and single adult women with family members who have been targeted and killed by Honduran gangs. She also sought withholding of removal and CAT relief. The IJ concluded that Santos had not shown that the gang members had persecuted her as a result of her family ties or that Honduran society viewed single adult women with family members who had been targeted and killed by Honduran gangs as a socially distinct group. The BIA adopted the IJ's reasoning on appeal, and Santos filed a timely petition for review.

## II.     Discussion

We have jurisdiction over Santos's final order of removal under 8 U.S.C. § 1252(a)(1), and we review the BIA's legal conclusions de novo and its factual findings for substantial evidence. *Alimbaev v. Attorney Gen.*, 872 F.3d 188, 194, 196 (3d Cir. 2017). Our review encompasses the BIA's opinion and, to the extent that the BIA adopts it, the IJ's decision as well. *Quao Lin Dong v. Attorney Gen.*, 638 F.3d 223, 227 (3d Cir. 2011). We first address Santos's asylum and withholding of removal claims before turning to her CAT claim.

### A.     Asylum and Withholding of Removal

---

2005).

3

In seeking asylum and withholding of removal, Santos argued that she had been persecuted on account of (1) her membership in the particular social group of single adult women who have lost family members to gang violence and (2) her familial ties. Substantial evidence supports the BIA's denial of relief on both grounds.

1. *Santos's Proposed Social Group of Single Adult Women with Family Members Who Have Been Targeted and Killed by Honduran Gangs*

In rejecting Santos's proposed particular social group of single adult women with family members who have been targeted and killed by Honduran gangs, the BIA relied on *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (BIA 2014), which established that an asylum applicant must show that a proposed social group not only shares an immutable characteristic, but also is "particular" and "socially distinct." *Id.* at 240. The BIA's adoption of these requirements, we have recently held, merits *Chevron* deference. *S.E.R.L. v. Attorney Gen.*, 894 F.3d 535, 549-55 (3d Cir. 2018).

Here, the BIA determined that Santos had not shown that single adult women whose families have been targeted and killed by Honduran gangs are "perceived as distinct" in Honduran society. *See S.E.R.L.*, 894 F.3d at 552 (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 244) (internal quotation marks omitted). We conclude that substantial evidence supports that decision. Although Santos submitted several newspaper articles, multiple country reports, and two expert reports documenting endemic gang violence against women in Honduras, none of this evidence compels the conclusion that Honduran society considers single adult women with slain family

4

members as a socially distinct group.  At best, Santos's evidence demonstrates that single adult women who have already lost family members to gang violence are more vulnerable to gang violence themselves, but the proclivities of the persecutor, though sometimes probative, do not determine whether Honduran society views them as a socially distinct group.[2]  *Matter of M-E-V-G-*, 26 I. & N. Dec. at 242; *see S.E.R.L.*, 894 F.3d at 551.  To the extent that Santos advocates on appeal for a broader social group consisting of single adult women or all women, Santos failed to exhaust this argument before the BIA.  *See Lin v. Attorney Gen.*, 543 F.3d 114, 120-21 (3d Cir. 2008).

## 2.  *Santos's Familial Ties*

Both the BIA and several circuits have recognized that a family may qualify as a particular social group, even under the BIA's "particularity" and "social distinction" requirements.  *See Matter of L-E-A-*, 27 I. & N. Dec. 40, 42 (BIA 2017); *see also, e.g.*, *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015).  But the only evidence that Santos offered suggesting that gang members targeted her based on her family ties was the letter referring to the murder of her brother, Jose Levis.  And even Santos understood the letter as a threat to kill her if she refused to join the gang, not because she was a relative of Jose Levis.  The remaining acts of violence inflicted on Santos and her family clearly did not result from their common familial bonds:  As Santos acknowledged, gang members targeted Jose Levis because he refused to join the gang,

---

[2] Because *Matter of M-E-V-G-* squarely controls, we need not consider the effect, if any, of *Matter of A-B-*, 27 I. & N. Dec. 316 (2018), on this case.

and Roberto Carlos, because they thought he was affluent. Nor did Santos suggest the robberies were motivated by her family ties.

In sum, substantial evidence supports the BIA's determination that Honduran society does not consider single adult women whose family members have been targeted and killed in gang violence as a socially distinct group and that gang members did not target Santos because of her family ties. Because the standard for withholding of removal is "higher than, albeit similar to, the standard for asylum," Santos's withholding of removal claim fails as well. *Shardar v. Ashcroft*, 382 F.3d 318, 324 (3d Cir. 2004) (citation omitted).

### B.    Convention Against Torture

We likewise will not disturb the BIA's denial of CAT relief. After considering the documentary evidence and Santos's testimony, the IJ concluded that Santos had not shown that she probably would be tortured upon her return to Honduras or that— notwithstanding evidence of general corruption—the government would be willfully indifferent to potential acts of gang violence against her. Under the substantial evidence standard, we cannot conclude that the record compels a contrary conclusion. *See Kibinda v. Attorney Gen.*, 477 F.3d 113, 123 (3d Cir. 2007).

## IV.    Conclusion

For the foregoing reasons, we will deny the petition for review.