# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-1526

_____

Maria Guadalupe Miranda,    *
                           *
       Petitioners,     *
                           * Petition for Review of an
                             Order of
   v.                  * the     United     States
                             Immigration and
                           * Naturalization Service
United States Immigration and *
Naturalization Service,    *
                           *
       Respondent.      *

_____

Submitted:    October 20, 1997

Filed:    March 20, 1998

_____

Before McMILLIAN, LAY and BEAM, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Petitioner, Maria Guadalupe Miranda, a 29-year-old native and citizen of El Salvador, who entered the United States in 1992, petitions for judicial review of the decision of the Board of Immigration Appeals (BIA) finding her ineligible for asylum or withholding of

deportation.  In re Miranda, No. A70 190 678 (B.I.A. Feb. 3, 1997) (hereinafter "BIA Order") (dismissing appeal from oral decision of the immigration

judge (IJ), <u>id.</u> (June 22, 1996) (hereinafter "IJ Decision")). Petitioner seeks relief on the ground that the BIA erroneously concluded that she failed to establish persecution or a well-founded fear of persecution on account of her political opinion. For the reasons set forth below, we deny the petition and affirm the decision of the BIA.

## Background

Petitioner entered the United States without inspection on July 8, 1992, near San Ysidro, California. Following her apprehension by immigration authorities, deportation proceedings were commenced against her. She sought and received a change of venue, and her case was heard in Council Bluffs, Iowa. At her deportation hearing, petitioner conceded deportability. She applied for political asylum on the ground that she was being persecuted in her home country, El Salvador, because of her political opinions. As the only witness at her deportation hearing, she testified to the following facts. While petitioner was working in the coffee fields near her hometown of LaLibertad during the 1980s, members of the Frente Farabundo Marti Para La Liberacion Nacional (FMLN) tried to recruit her on an average of eight to ten times per season. The FMLN members used threats to persuade her to join them. She refused to join, stating to the FMLN members that she supported the government of El Salvador. The threats continued, causing her to move to San Salvador in 1989. Petitioner remained in San Salvador for two to three years, until she left for the United States in 1992. After reaching the United States, she learned, through contacts with her mother in

El Salvador, that FMLN members continued to seek her whereabouts, notwithstanding a peace agreement signed in El Salvador in 1992.

The IJ found petitioner not eligible for either asylum or withholding of deportation. Applying the principles set forth in INS v. Elias-Zacarias, 502 U.S. 478 (1992), the IJ found that petitioner had failed to present evidence that her alleged persecutors, members of the FMLN, were motivated to punish petitioner because of her political opinion. The IJ recognized that, for several years during the war in

El Salvador, petitioner resisted pressure to join the FMLN. The IJ reasoned, however, that

> [h]er bald statement that she refused [to join] because she supported the Salvadoran government is insufficient to establish a political basis, or motivation for her actions. [Petitioner] has no history of political expression which provoked the FMLN's reaction to her. She was not active in any political movement. Therefore, since she never participated or was involved in any political movement, the guerrillas would not have sought her out because of her political beliefs or opinions because in fact she never expressed any. The most logical conclusion is that they wanted another recruit to be included in their forces.

IJ Decision at 5.

The IJ further noted that the political events in El Salvador during the 1980s, which formed the background for petitioner's claim of political persecution, had been superseded by numerous political changes including the peace agreement signed in 1992, elections in 1994, and a significant decrease in political violence since petitioner left El Salvador. Id. at 5-7. Finally, the IJ noted that, although petitioner's testimony was credible, there were some inconsistencies and ambiguities in her own recollections. Id. at 7. In addition to denying petitioner's application for political asylum and her request for withholding of deportation, the IJ granted her voluntary departure. Id.

Petitioner appealed the IJ's decision to the BIA. The BIA agreed with the IJ that petitioner had failed to

establish eligibility for asylum under <u>Elias-Zacarias</u>. BIA Order at 2. The BIA further concluded that petitioner could not establish eligibility for withholding of deportation, noting its more onerous standard of proof than eligibility for asylum. <u>Id.</u> at 3 (citing <u>In re Mogharrabi</u>, 19 I. & N. Dec. 439 (B.I.A. 1987)). The

BIA dismissed petitioner's appeal, and she filed the present petition for review pursuant to 8 U.S.C.§ 1105a(a).[1]

**Discussion**

The issue before us in the present case is whether reasonable, substantial, and probative evidence in the record as a whole supports the BIA's conclusion that petitioner failed to prove her eligibility for asylum. See Feleke v. INS, 118 F.3d 594, 598 (8th Cir. 1997) ("The Board's decision that an alien is not eligible for asylum must be upheld if supported by reasonable, substantial and probative evidence on the record considered as a whole.") (citing Nyonzele v. INS, 83 F.3d 975, 981 (8th Cir. 1996)). In making that determination, we may not reweigh the evidence. Id.

The Attorney General has discretion to grant asylum to a "refugee." 8 U.S.C. § 1158(b)(1). A "refugee" is defined as an alien who is unwilling to return to his or

---

[1]The jurisdictional statute, 8 U.S.C. § 1105a, was repealed under § 306(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996), as amended by Pub. L. 104-302, 110 Stat. 3656 (Oct. 11, 1996). The repeal became effective on April 1, 1997, under § 309(a) of the IIRIRA. With respect to final orders of deportation entered after October 31, 1996, and before April 1, 1997, § 309(c)(4)(C) of the IIRIRA provides "the petition for judicial review must be filed not later than 30 days after the date of the final order of exclusion or deportation," and § 309(c)(4)(D) provides "the petition for review shall be filed with the court of appeals for the judicial circuit in which the administrative proceedings before the special inquiry officer or immigration judge were completed." Because petitioner filed her petition for judicial review within 30 days after the BIA's deportation decision of February 3, 1997, and Council Bluffs, Iowa, is within our circuit, the petition was timely filed and jurisdiction is proper in this court.

her home country because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  Id. § 1101(a)(42)(A).

Persecution has been defined by the BIA as "either a threat to the life or freedom of, or the infliction of suffering and harm upon, those who differ in a way regarded as offensive." In re Acosta, 19 I. & N. Dec. 211, 222 (B.I.A. 1985) (adopting the pre-1980 definition of "persecution" for purposes of interpreting 8 U.S.C. § 1101(a)(42)(A)).[2] In In re Acosta, the BIA specified two required components of "persecution" under 8 U.S.C. § 1101(a)(42)(A): first, the harm or suffering had to be inflicted upon the individual in order to punish him or her for possessing a belief or characteristic the persecutor sought to overcome; and, second, the harm or suffering had to be inflicted either by the government of a country or by persons or an organization that the government was unable or unwilling to control. Id. Without those components, the BIA noted, the term "persecution," as used in § 1101(a)(42)(A), "does not embrace harm arising out of civil strife or anarchy." Id. at 223. In order to prove a well-founded fear of persecution, the BIA further explained, the petitioner must establish each of the following four elements:

> (1) the alien possesses a belief or a characteristic the persecutor seeks to overcome in others by means of punishment of some sort; (2) the persecutor is already aware, or could

---

[2] We review the BIA's legal determinations *de novo*, according substantial deference to its interpretation of the statutes and regulations it administers. Vue v. INS, 92 F.3d 696, 699 (8th Cir. 1996) (citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-44 (1984)). If the agency's interpretation is reasonable, we cannot replace it with our own judgment. Franklin v. INS, 72 F.3d 571, 572 (8th Cir. 1995) (citing Arkansas AFL-CIO v. FCC, 11 F.3d 1430, 1441 (8th Cir. 1993)), cert. denied, 117 S. Ct. 105 (1996).

easily become aware, that the alien possesses this belief or characteristic; (3) the persecutor has the capability of punishing the alien; and (4) the persecutor has the inclination to punish the alien.

Id. at 227; In re Mogharrabi, 19 I.& N. Dec. at 446.

In <u>Ghasemimehr v. INS</u>, 7 F.3d 1389, 1390 (8th Cir. 1993), this court held that proof of a well-founded fear of persecution requires showing both that the fear is subjectively genuine and that the fear is objectively reasonable.  To prove objective reasonableness, the alien must show, based upon credible, direct, and specific evidence, that a reasonable person in the same circumstances would fear persecution if returned to the petitioner's native country.  <u>Id.</u>  The fear must have a basis in reality and must be neither irrational nor so speculative or general as to lack credibility.  <u>Id.</u> at 1390-91.  "To overcome the BIA's finding that [the petitioner] lacked a well-founded fear of persecution, [the petitioner] must show 'the evidence he [or she] presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution.'" <u>Id.</u> at 1390 (citing <u>Elias-Zacarias</u>, 502 U.S. at 483-84).

The Supreme Court held, in <u>Elias-Zacarias</u>, 502 U.S. at 482-84, that evidence of a guerilla organization's attempt to coerce a person into joining its military forces does not, without more, establish persecution on account of  political opinion; nor does it, alone, establish a well-founded fear of persecution on account of political opinion.  The Supreme Court held that such evidence is insufficient because "[e]ven a person who supports a guerilla movement might resist recruitment for a variety of reasons-fear of combat, a desire to remain with one's family and friends, a desire to earn a better living in civilian life, to mention only a few."  <u>Id.</u> at 482.  The Supreme Court emphasized that, in the immigration context, the persecution must be *on account of political opinion* and, moreover, that political

opinion must be the *victim's*, not the persecutor's.   <u>Id.</u>

In the present case, the IJ found, and the BIA agreed, that petitioner had failed to meet her burden to prove persecution or a well-founded fear of persecution on account of political opinion.   We agree.   While petitioner testified that the FMLN members threatened to kill her after she told them that she supported the government, the evidence suggests that her support for the government was not the reason for their efforts to recruit her or their threats.   Furthermore, at no time did FMLN ever single

out petitioner or demonstrate an inclination to punish her.  According to petitioner's own testimony, FMLN never sought to overcome her beliefs; to the contrary, it appeared that they tried to recruit her because of her relatively young age.  Also, nothing in the record indicates that any of the coffee pickers joined the FMLN, that any harm befell others who, like petitioner, refused to join, or that any FMLN member ever attempted to kill her or the others.  Nor is there any evidence that members of the FMLN ever threatened a member of petitioner's family.  Finally, although petitioner testified that she believed the threats to be serious, she continued for several years to return to the coffee fields to work.  While petitioner may have needed the work, her actions were not entirely consistent with the fear for her life that she allegedly experienced.  In sum, based on the record before us, we conclude that the evidence is not so compelling that no reasonable factfinder could fail to find the requisite persecution or well-founded fear of persecution.

## Conclusion

Because reasonable, substantial, and probative evidence in the record as a whole supports the BIA's conclusion that petitioner failed to meet her burden to prove persecution or a well-founded fear of persecution, we deny the relief petitioner seeks.  The petition is denied, and the decision of the BIA is affirmed.

A true copy.

Attest:

-13-

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.