# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 04-2258

———————

Hayad Ahmed Guure; Salma Ciise    *
Liban; Yahia Ciise Liban;    *
Zubeer Ciise Liban,    *
   *    Petition for Review of
       Petitioners,    *    an Order of the Board of
   *    Immigration Appeals.
     v.    *
   *     [UNPUBLISHED]
Alberto Gonzales,[1] Attorney General,    *
   *
      Respondent.    *

———————

Submitted: April 7, 2005
Filed: April 12, 2005

———————

Before WOLLMAN, MURPHY, and BENTON, Circuit Judges.

———————

PER CURIAM.

Hayad Ahmed Guure (Hayad) and her children (collectively, the Guures), petition for review of an order of the Board of Immigration Appeals (BIA) affirming

---

[1]Alberto Gonzales has been appointed to serve as Attorney General of the United States, and is substituted as appellee pursuant to Federal Rule of Appellate Procedure 43(c).

an Immigration Judge's (IJ's) denial of their application for asylum and withholding of removal.[2]  Having carefully reviewed the record, we deny the petition.

The Guures, who represent that they are natives of Somalia, entered the United States without inspection and, in September 2001, they applied for asylum.  In January 2002 the former Immigration and Naturalization Service (INS) charged the Guures with being removable for not possessing valid entry documents; the Guures conceded removability and renewed their asylum application.

In support of the asylum application, Hayad testified to the following.  She was a member of the Tumal clan, who were outcasts in Somalia; however, there was no way for other Somalis to discern Hayad's tribal membership because Tumals spoke the same language and practiced the same religion as other tribes.  Her family lived in Mogadishu, Somalia, where her father served in the Somali military as a palace security guard.  On January 25, 1991, members of the United Somali Congress (USC) came to her family's home demanding money and to know the whereabouts of "those outcasts" who "were working for Faqash."  The USC entered Hayad's home and killed her brother, raped Hayad and her pregnant sister, and told her family to leave the city or they would be killed.  The next day her father was killed and Hayad, her sister, and her mother fled to Kenya.  Hayad lived at refugee camps in Mombasa, Kenya, and then went to live in Nairobi, Kenya, where her children were born.  On August 31, 2001, Hayad and the children came to the United States with the help of a smuggler.  Hayad was afraid that she would be killed if she returned to Somalia; she did not believe she would be targeted, but rather she was afraid because of her clan membership and because her father had belonged to the military of the previous government.

---

[2]The Guures are not challenging the IJ's decisions to deny them voluntary departure or relief under the Convention Against Torture.  See Chay-Velasquez v. Ashcroft, 367 F.3d 751, 756 (8th Cir. 2004).

According to the 2000 Profile of Asylum Claims and Country Conditions, Somalia has lacked a central government since 1991 and has been subject to serious civil unrest. Political violence and banditry have been endemic and many persons have been injured or killed as a result of interfactional and interclan fighting. The report concluded that, although the Tumal may have been targeted during the civil strife, there was no automatic correlation between clan affiliation and danger of persecution.

The IJ denied asylum, finding that the Guures had failed to show, by clear and convincing evidence, that they applied for asylum within the one-year deadline imposed by 8 U.S.C. § 1158(a)(2)(B). The IJ also denied asylum as a matter of discretion, because Hayad had failed to apply for resettlement and she was not fleeing persecution when she left Kenya; denied all removal relief, concluding that Hayad was not credible; and denied asylum and withholding of removal on the merits as well, because Hayad's testimony was general and meager, she failed to present objective documentary evidence, and the harm she suffered appeared to have occurred because of the civil strife in Somalia and not on account of a protected ground. The BIA affirmed the IJ's decision without opinion.[3]

We cannot review the IJ's conclusion that the Guures' asylum application was untimely. See 8 U.S.C. § 1158(a)(3) (no court shall have jurisdiction to review any determination with respect to whether asylum applicant timely filed asylum application); Ngure v. Ashcroft, 367 F.3d 975, 989 (8th Cir. 2004) (courts lack jurisdiction under § 1158(a)(3) to consider alien's challenge to IJ's timeliness determination).

---

[3]The IJ's decision, therefore, constitutes the final agency determination for purposes of judicial review. See Dominguez v. Ashcroft, 336 F.3d 678, 679 n.1 (8th Cir. 2003).

For purposes of reviewing the denial of withholding of removal, however, we review the IJ's additional finding that the Guures did not show they suffered past persecution or had a well-founded fear of future persecution, and we conclude substantial evidence supports the IJ's finding.  See Ngure, 367 F.3d at 989-92 (standard of review; reviewing IJ's alternate finding of no well-founded fear of persecution for purposes of reviewing denial of withholding of removal); Mohamed v. Ashcroft, 396 F.3d 999, 1004-1005 (8th Cir. 2005) (Somali national whose home had been looted and whose son had been killed in 1990 failed to satisfy burden of proving that such conduct was on account of clan membership where conduct occurred during period of civil unrest and generalized looting, and country report indicated such banditry was endemic in Somalia at time); Hassan v. Ashcroft, 388 F.3d 661, 666-67 (8th Cir. 2004) (IJ's decision to discount Somali national's claim that he was member of persecuted clan was supported by substantial evidence where he admitted that one could not determine clan membership by physical appearance, dialect, or area in which person lived in Mogadishu; and in any event country report indicated there was no automatic correlation between clan affiliation and danger of persecution); Miranda v. INS, 139 F.3d 624, 627 (8th Cir. 1998) (persecution does not embrace harm arising out of civil strife or anarchy).  Thus, the Guures' claim for withholding of removal fails.  See Regalado-Garcia v. INS, 305 F.3d 784, 788 (8th Cir. 2002) (withholding-of-removal standard is more rigorous than asylum standard).

Accordingly, we deny the petition for review.

_____