# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-2812

_____

Prudencia Jimenez Galloso

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

------------------------------

Immigration Law Professors

*Amicus on Behalf of Petitioner*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: November 14, 2019
Filed: April 7, 2020

_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.

_____

KELLY, Circuit Judge.

Prudencia Jimenez Galloso petitions for review of a decision of the Board of Immigration Appeals (BIA) denying her applications for asylum and withholding of removal. Because we conclude she failed to meet her burden of showing a well-founded fear of future persecution, we deny the petition for review.

I.

Galloso is a citizen of Mexico. In February 2001, she entered the United States without inspection. After she was placed in removal proceedings in 2017, she sought asylum, withholding of removal, and relief under the Convention Against Torture (CAT). Galloso claimed that if she returned to Mexico, she would face future persecution based on her membership in four particular social groups: (1) Mexican females; (2) close family members; (3) "Mexican married women in domestic relationships they are unable to leave"; and (4) "married Mexican women who are viewed as property by virtue of their position within a domestic relationship."

At the hearing before the Immigration Judge (IJ), Galloso testified that she suffered repeated physical and sexual abuse while in Mexico and the United States. After dropping out of school at age fifteen, she met and married Miguel Orlando Sosa in Mexico. Sosa abused Galloso until he left for the United States, but Galloso never reported the abuse to the Mexican police. Sometime after entering the United States, Galloso divorced Sosa. She then met Juan Alvarez Casanova, married him, and had a son with him. Casanova began physically and sexually abusing Galloso after they married. Galloso never called the police about Casanova's abuse, except for one time when Casanova locked her and their son outside of the house in the winter. In 2012, Casanova was removed to Mexico for charges unrelated to Galloso.

Galloso testified that she fears Casanova will harm her if she returned to Mexico. Since his removal to Mexico, Casanova has repeatedly called Galloso and threatened to make her "disappear" if she ever came back. Casanova lives in

Campeche, Mexico, which is five hours away from Merida, the town Galloso would live in if she returned to Mexico. Casanova knows Galloso's family lives in Merida but he has not visited the town since 2012. Despite Casanova's threats, Galloso maintained she would not call the Mexican police if she returned because she believes the police are corrupt and would not help her. For support, she relied on country condition reports that indicated police corruption is a significant problem in Mexico. The reports also noted "70 percent of female homicide victims in Mexico were killed by their intimate partners" and "the majority of these women had sought help from government authorities, but that nothing had been done because this type of violence was considered a private matter."

The IJ denied Galloso's requests for relief, and the BIA affirmed. The BIA agreed with the IJ's determination that Galloso failed to show a well-founded fear of future persecution. It noted that "[w]hile the country condition reports indicate that the justice system in Mexico is corrupt, the respondent has not met her burden to prove that the government either condoned the behavior of her abusers or that the government was unable to prevent the abuse." The BIA thus concluded that Galloso "did not establish that the Mexican government was or would be unable or unwilling to control her alleged persecutors." It also found no error in the IJ's denial of Galloso's asylum application as time-barred, and concluded the IJ's determinations that only the two "married Mexican women" social groups are cognizable and that Galloso is not a member of the "Mexican married women in domestic relationships they are unable to leave" group. Galloso now petitions for review.

## II.

"We review the BIA's decision, as it is the final agency decision; however, to the extent that the BIA adopted the findings or reasoning of the IJ, we also review the IJ's decision as part of the final agency action." Davila-Mejia v. Mukasey, 531 F.3d 624, 627 (8th Cir. 2008). We review the BIA's legal determinations de novo and

employ the deferential "substantial evidence" standard when reviewing the BIA's factual determinations. Eusebio v. Ashcroft, 361 F.3d 1088, 1091 (8th Cir. 2004). Under that standard, "we must affirm the BIA's factual decisions unless, after having reviewed the record as a whole, we determine that it would not be possible for a reasonable fact-finder to adopt the BIA's position." Id.

To be eligible for asylum, an applicant must show that she meets the definition of "refugee." 8 U.S.C. § 1158(b)(1). A refugee is a person who is outside the country of that person's nationality "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1101(a)(42). An applicant who establishes past persecution is entitled to a rebuttable presumption that she possesses a well-founded fear of future persecution on the same basis. 8 C.F.R. § 1208.13(b)(1). But an applicant who fails to establish past persecution must demonstrate a well-founded fear of future persecution that is "both subjectively genuine and objectively reasonable." Bracic v. Holder, 603 F.3d 1027, 1034 (8th Cir. 2010).

Galloso does not contest the agency's determination that she failed to show past persecution; instead, she argues that the agency applied an incorrect, heightened standard of proof when determining that she lacked a well-founded fear of future persecution from Casanova. She contends that, under 8 U.S.C. § 1101(a)(42) and caselaw, she is only required to prove that the Mexican government is "unable" or "unwilling" to control Casanova's actions; yet the BIA stated she must prove that the Mexican government "condones" Casanova's behavior or, as the IJ noted, is "completely helpless" to prevent it.

The BIA has adopted, and we have approved as reasonable, a definition of "persecution" that requires a harm to be "inflicted either by the government of [a

-4-

country] or by persons or an organization that the government was unable or unwilling to control." Miranda v. INS, 139 F.3d 624, 627 (8th Cir. 1998). A government's ability to control the persecutors is a question of fact, and we must uphold the agency's finding regarding this question of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see Saldana v. Lynch, 820 F.3d 970, 976 (8th Cir. 2016) (a government's ability to control persecutors is a question of fact).

To the extent that the condone-and-completely-helpless standard conflicts with the unable-and-unwilling standard, the latter standard controls. See Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) ("[W]hen faced with conflicting panel opinions, the earliest opinion must be followed as it should have controlled the subsequent panels that created the conflict.") (cleaned up). Compare Miranda, 139 F.3d at 627 (applying the unable-and-unwilling standard), with Menjivar v. Gonzales, 416 F.3d 918, 921 (8th Cir. 2005) (stating for the first time that a petitioner must show the government condones or is completely helpless to prevent a private actor's behavior). But here, even assuming the standards are different, the BIA found Galloso failed under either and specifically noted it "affirm[s] the Immigration Judge's conclusion that the respondent did not establish that the Mexican government was or would be unable or unwilling to control her alleged persecutors." Thus, Galloso has not shown reversible legal error.

In addition, based on the record, we cannot conclude that any reasonable adjudicator would be compelled to find that she established a well-founded fear of future persecution under the unable-and-unwilling standard. Because Galloso testified that she never contacted the police when she was abused in Mexico, she must provide some evidence to show the Mexican government would be unable or unwilling to help her. Cf. Ngengwe v. Mukasey, 543 F.3d 1029, 1035–36 (8th Cir. 2008) (determining that petitioner met her burden of proving future persecution because, even though she never called the police in Cameroon, a relative provided an

-5-

affidavit stating that the police refused to stop a prior beating of a family member as the police deemed it "a family issue"); Matter of S-A-, 22 I. & N. Dec. 1328, 1334 (BIA 2000) (finding that petitioner met her burden of proof showing that the government would be unable or unwilling to protect her, despite not contacting the police, because of "the importance of the corroborative evidence provided by testimony of the respondent's aunt and the 1997 Country Reports contained in the record"). We agree with the BIA that Galloso has not made this showing. The country reports here are too general and do not support a well-founded fear of future persecution as to Galloso. The percentage of female homicide victims killed by their intimate partners is a disturbing statistic. But it does not reveal the total number of female homicide or domestic violence victims, or how prevalent the problem of female homicide by intimate partners is in Mexico. Further, the fact that the majority of the female homicide victims had previously sought help from governmental authorities, while troubling, does not help Galloso because she undisputedly did not contact the police and testified that she would not contact the police in the future. Based on the country reports and her own testimony that she did not and would not contact the Mexican police, Galloso failed to show that the Mexican government is unable or unwilling to protect her. And because Galloso cannot satisfy the lower burden of proof required to establish eligibility for asylum, it follows that she cannot establish eligibility for withholding of removal. Gutierrez-Vidal v. Holder, 709 F.3d 728, 733 (8th Cir. 2013).

Galloso also argues that the BIA erred by affirming the IJ's finding that her asylum application was untimely. The government contends we lack jurisdiction to review the BIA's determination that an asylum application was untimely. We need not reach this issue because, even assuming Galloso's asylum application was timely, we find no basis for granting her petition for review as she did not show a well-founded fear of future persecution.

Galloso further contends that the BIA erred by (1) failing to address whether she was a member of the particular social group "married Mexican women in domestic relationship they are unable to leave" with respect to Casanova; and (2) affirming the IJ's determination that "Mexican females" is not a particular social group. We also need not reach these arguments. Even assuming "Mexican females" is a cognizable social group and that Galloso is a member of both the "Mexican females" and "unable to leave" groups, we find that she failed to meet her burden of proving future persecution and is thus not entitled to relief.

The petition for review is denied.

_____