# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-1773

_____

Enmanuel Isaac Rodriguez Fuentes

*Petitioner*

Fatima Rodriguez Fuentes

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: May 13, 2020
Filed: August 12, 2020
[Published]

_____

Before SMITH, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Fatima Rodriguez Fuentes and her minor son Emmanuel Isaac Rodriguez Fuentes ("Emmanuel"), natives and citizens of El Salvador, petition for review from a final order of the Board of Immigration Appeals ("Board") affirming the immigration judge's (IJ) order of removal. We deny the petition.

## I. *Background*

Fuentes and Emmanuel are natives and citizens of El Salvador who applied for admission to the United States at the Douglass, Arizona port of entry on March 30, 2016. On September 9, 2016, Fuentes and her son were placed in removal proceedings by issuance of separate Notices to Appear. They were charged with being removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as aliens who at the time of application for admission did not possess valid entry documents. At a hearing, they admitted to the allegations against them and conceded the charge of removability.

Fuentes subsequently filed an application for asylum, withholding of removal, and protection pursuant to the Convention Against Torture (CAT). Emmanuel's application was derivative of Fuentes's asylum application.[1] Fuentes claimed that she was persecuted because of her membership in the Fuentes family—specifically, because of her relationship with Reynaldo Fuentes Espinosa, her uncle. She also

---

[1]"[T]here are no derivative benefits associated with a grant of withholding of removal because, unlike the asylum statute, the withholding statute contains no mention of derivative rights." *Martinez v. U.S. Att'y Gen.*, 324 F. App'x 829, 833 (11th Cir. 2009) (per curiam). Likewise, protection under CAT does not provide derivative benefits. *Id.* ("The CAT regulation likewise contains no mention of derivative rights; it limits the applicant and seemingly forecloses a derivative claim."). Emmanuel did not file an independent application for withholding of removal or CAT protection; therefore, his only avenue for relief from removal is as a derivative beneficiary of Fuentes's asylum application.

claimed that she was persecuted because of her status as a female head of household and as a vulnerable Salvadoran female.

The IJ conducted a hearing on Fuentes's application. Fuentes testified that she left El Salvador because members of the MS-13 gang threatened her, asked her to give them money in exchange for not harming her, and asked for information about Espinosa. According to Fuentes, MS-13 controlled the town in which she and her family lived. Espinosa lived in the same town and was friendly with members of "18," a rival gang. MS-13 suspected Espinosa of passing information to the rival gang and shot at him in retaliation. Espinosa fled to another part of El Salvador after the shooting. Fuentes testified that after Espinosa fled, MS-13 members began asking her for information regarding his whereabouts. According to Fuentes, MS-13 members threatened to beat or kill her unless she gave them money. Out of fear, Fuentes paid the gang members $100 on ten occasions, beginning in February 2014 and ending in December 2014.

Although the gang members intimidated Fuentes with knives, they never physically harmed her because she met their demands for payment. Fuentes feared that if she did not pay, MS-13 members would beat, rape, or kill her. Fuentes feared violent retribution. She knew gang members killed Espinosa's girlfriend after she went "around talking about . . . . the gang members' wives." Admin. Rec. at 166. Fuentes left El Salvador because she "didn't want to continue paying [gang members] any more money." *Id.* at 137.

Fuentes testified that she did not report the threats she received from MS-13 members to the police because she "was afraid that [MS-13 members] would follow through on their threats." *Id.* at 136. Fuentes admitted that had she reported the extortion to police, "they would have gone to arrest them," but she said that "there are always others." *Id.*

Fuentes testified that she lived in the same house as her mother in El Salvador. Fuentes admitted that her father, mother, sister, and grandmother were never threatened by MS-13 members. She further admitted that MS-13 members never threatened two of her uncles who lived in her town or two of her aunts who lived in a different town but visited Espinosa once a month. According to Fuentes, the gang members did not threaten her family members because they did not have money as she did. The gang knew that she received money from her father in the United States.

Fuentes introduced documentary evidence pertaining to gangs in El Salvador, including the U.S. Department of State 2016 Human Rights Report for El Salvador. This report stated that "[i]nadequate training, lack of enforcement of the administrative police career law, arbitrary promotions, insufficient government funding, failure to enforce evidentiary rules effectively, and instances of corruption and criminality limited the [police's] effectiveness." *Id.* at 267.

The Department of Homeland Security (DHS) introduced media reports demonstrating that the Salvadoran government interdicted criminal gangs and drug traffickers. In 2016, El Salvador began a $2.1 billion program called Plan Secure Salvador to limit the influence of gangs. El Salvador also joined Honduras and Guatemala in forming a joint task force to combat gangs. And, El Salvador implemented new measures to limit the influence exercised by imprisoned gang members. These inmates had previously directed the commission of crimes by fellow gang members who were not incarcerated. According to the reports, these measures resulted in the homicide rate in El Salvador declining 20 percent in 2016 and 50 percent in the first four months of 2017.

The IJ denied Fuentes's and her son's applications for asylum and Fuentes's application for withholding of removal and CAT protection. The IJ determined that Fuentes did not suffer past persecution. First, the IJ concluded that the alleged harm

did not rise to the level of persecution based on its findings that the threats were "lacking in immediacy" and "involved no physical injury." *Id.* at 57.

Second, the IJ concluded that the harm was not on account of a statutorily protected ground. The IJ rejected Fuentes's assertion that she suffered harm on account of her membership in three particular social groups. Considering the first social group, the IJ rejected Fuentes's "conten[tion] that she suffered harm on account of her membership in the Fuentes family." *Id.* at 58. Fuentes produced no evidence that any of her family members were threatened or harmed. Fuentes's testimony showed that the gang targeted her not because of her family relations but because she had money. Thus, the IJ found that the gang threatened and extorted money from Fuentes based on her financial resources, not because of her membership in the Fuentes family.

Next, the IJ found that Fuentes failed to demonstrate that she suffered harm based on her membership in the particular social group of Salvadoran female heads of households. The IJ found that because Fuentes did not testify or provide documentary evidence regarding this proposed particular social group, she failed to establish that the group met the requirements for social distinction and particularity. Additionally, the IJ found that because Fuentes testified that she lived with her mother, she failed to establish that she was a member of this purported particular social group. As to Fuentes's third proposed particular social group—vulnerable Salvadoran females—the IJ found that it "is not a particular social group because it lacks particularity and is amorphous." *Id.* at 59. The IJ found "[i]t unclear what the term 'vulnerable' references" and found that a particular social group may not be defined based on the persecution its members suffered. *Id.* As a result, the IJ found that Fuentes failed to prove that she was harmed based on her membership in a particular social group.

-5-

Third, the IJ determined that Fuentes failed to prove that the Salvadoran government was unwilling or unable to protect her. According to the IJ, because Fuentes failed to report the harm she suffered to the police, she "never gave the police a chance to protect her from the gang threats." *Id.* at 60. The IJ weighed Fuentes's failure to report "heavily" against Fuentes. *Id.* While the IJ acknowledged that "the Salvadoran police have issues with corruption and effective control of their forces," it noted that "they do carry out anti-gang operations." *Id.*

According to the IJ, Fuentes failed to demonstrate that (1) the harm she suffered rose to the level of persecution; (2) the harm was on account of a protected ground; and (3) the government was unwilling or unable to protect her. Consequently, the IJ found that she failed to meet her burden to prove she suffered past persecution. Because she did not do so, the IJ found that Fuentes failed to establish her eligibility for asylum. Fuentes necessarily was short of the higher burden for obtaining withholding of removal.

The IJ also denied Fuentes's claim for CAT protection. The IJ found that Fuentes failed to establish that the Salvadoran government would ignore her torture by MS-13. Contrary to Fuentes's contention, the IJ determined that the country conditions evidence demonstrated that El Salvador was actively trying to combat gang violence. And, the IJ found that El Salvador's inability to eliminate the threat posed by gangs was not sufficient to establish government acquiescence to torture.

The Board affirmed the IJ's decision. It found that Fuentes failed to demonstrate that the harm she suffered in El Salvador "was attributable to anything other than general conditions of crime and violence." *Id.* at 4. Thus, the Board agreed with the IJ that Fuentes failed to establish that a protected ground was one central reason for the harm she suffered. The Board found that because Fuentes could not demonstrate a nexus between her past harm and a protected ground, she failed to establish that she suffered past persecution. And, the Board found that "given the

-6-

nexus determination," Fuentes did not establish a well-founded fear of future persecution. She was thus ineligible for asylum, and consequently, withholding of removal. *Id.* Finally, the Board found that the IJ's denial of CAT protection was not clearly erroneous because Fuentes's arguments in support of her CAT claim were based on impermissible speculation.

## II. *Discussion*

Fuentes and her son petition for review of the Board's decision dismissing their appeal and upholding the IJ's decision. They argue that the IJ and Board erred in finding that Fuentes had not suffered past persecution and did not have a well-founded fear of future persecution on account of a protected ground. Additionally, they contend that the IJ and the Board erred in finding that Fuentes did not demonstrate that the government was unable or unwilling to help her. They maintain that Fuentes established that she suffered past persecution and has a well-founded fear of future persecution based on protected grounds. They argue that the IJ and Board failed to consider the police corruption and pattern and practice of persecuting women in El Salvador.

"When the [Board] adopts the IJ's findings of fact but adds its own reasoning, we review the agency's fact-finding in both decisions for substantial evidence." *Rodriguez-Mercado v. Lynch*, 809 F.3d 415, 417 (8th Cir. 2015). We review under the substantial evidence standard "decisions on asylum, withholding of removal, and CAT protection." *Ramirez v. Sessions*, 902 F.3d 764, 773 (8th Cir. 2018) (internal quotation omitted). Under this standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). We apply de novo review to "an agency's legal determinations"; however, we afford "great deference to the Board's interpretations of immigration statutes and regulations." *Id.* (cleaned up).

Fuentes contends that the Board erroneously denied her application for asylum. "An applicant is eligible for asylum if she is unable or unwilling to return to her country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Rivas v. Sessions*, 899 F.3d 537, 541 (8th Cir. 2018) (quoting 8 U.S.C. § 1101(a)(42)(A)). "An applicant for asylum may prove eligibility by establishing past persecution on account of one of the statutorily enumerated grounds, and if the applicant shows past persecution, he or she will be presumed to have a well-founded fear of future persecution." *Davila-Mejia v. Mukasey*, 531 F.3d 624, 628 (8th Cir. 2008).

Here, Fuentes "allege[s] that [she] w[as] persecuted on account of the statutorily enumerated ground of 'membership in a particular social group.'" *Id.* She "claims that she suffered persecution on account of her membership in three particular social groups": (1) the Fuentes family, (2) Salvadoran female heads of households, and (3) vulnerable Salvadoran females. *Rivas*, 899 F.3d at 541. "Under the Board's analysis, whether an asserted group qualifies as a 'particular social group' turns on whether the group is '(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'" *Id.* (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)). As to the social group's particularity, it must "be 'defined by characteristics that provide a clear benchmark for determining who falls within the group.'" *Id.* (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 239). "The group must also be discrete and have definable boundaries—it must not be amorphous, overbroad, diffuse, or subjective." *Matter of M-E-V-G-*, 26 I. & N. at 239. As to whether a group is socially distinct, "persecutory conduct alone cannot define the group. Whether a given particular social group is perceived as distinct by the society of which it is part depends on evidence that the society makes meaningful distinctions based on the common immutable characteristics defining the group." *Rivas*, 899 F.3d at 541(cleaned up).

"[A]lthough the Board has acknowledged that 'members of an immediate family may constitute a particular social group,' there must be a nexus between the persecution suffered and the applicant's membership in that social group." *Id.* at 542 (quoting *Matter of L-E-A-*, 27 I. & N. Dec. 40, 42 (BIA 2017)). To be eligible for asylum, an applicant must "demonstrate that her membership in the particular social group is 'at least one central reason' for the persecution." *Id.* (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). "[T]he fact that a persecutor targets a family member simply as a means to an end is not, by itself, sufficient to establish a claim." *Id.* (quoting *Matter of L-E-A-*, 27 I. & N. Dec. at 45). "The record [must] compel a conclusion that family relationship—independent of . . . other factors—was a central reason for persecution." *Id.* The fact that "other family members have not suffered persecution at the hands [of a gang] . . . supports the Board's conclusion that [the applicant] was [not] persecuted on account of her membership in the family." *Id.*

Here, Fuentes testified that the gang members did not threaten or harm other members of her family—including her mother, sister, grandmother, aunts, and uncles—because "they did not have money." Admin. Rec. at 156. She also testified that the gang members demanded monthly payments from her because they knew that she could pay. She further explained that her uncle's girlfriend was killed because she made disparaging remarks about gang members' wives. Therefore, as in *Rivas*, Fuentes's family relationship was not a central reason for the persecution; instead, it was because of her financial resources. The Board did not err by concluding that Fuentes's first group—membership in the Fuentes family—is not cognizable.

The Board also found that Fuentes "failed to prove past persecution on account of her membership in two [other] particular social groups, 'Salvadoran female heads of households' and 'vulnerable Salvadoran females.'" *De Guevara v. Barr*, 919 F.3d 538, 541 (8th Cir. 2019). The Board reached the same result as to Salvadoran female heads of households in *De Guevara*, "rul[ing] that 'Salvadoran female heads of households' is not a cognizable particular social group 'because it lacks social

-9-

distinction and particularity.'" *Id.* The Board characterized the proposed group as "too broad and amorphous to meet the particularity requirement" based on the applicant's failure to "show that 'head of household' has a commonly accepted definition with Salvadoran society," that "such condition [is] necessarily immutable," and "that such group is socially distinct." *Id.* The applicant petitioned for review, "argu[ing] that El Salvador country reports document that women 'are targeted by gangs for violence and extortion,' and she 'has personally experienced the dangers of living as a single woman in these conditions.'" *Id.* We held that "this is not evidence that 'female heads of households' are recognized in El Salvador society as a particular, socially distinct group. Thus, the [Board] did not err in ruling that [the applicant] failed to prove persecution on account of membership in a particular social group." *Id.*

Fuentes presented evidence similar to that of the applicant in *De Guevara*. As in *De Guevara*, her evidence is insufficient to establish "that 'female heads of households' are recognized in El Salvador society as a particular, socially distinct group." *Id.* The Board, therefore, did not err in ruling that Fuentes failed to prove persecution on account of her membership in the group of Salvadoran female heads of households.

Nor did the Board err in ruling that Fuentes failed to prove persecution on account of her membership in the group of vulnerable Salvadoran females. The IJ determined that this proposed group lacks particularity because "[i]t is unclear what the term 'vulnerable' references." Admin. Rec. at 59; *see also De Guevara*, 919 F.3d at 541 n.2. Fuentes asserts that the particularity requirement is satisfied because "[e]veryone in this group shares the common characteristic of being vulnerable to threats as a female without protection." Pet'r's Br. at 19. Fuentes's proposed group, however, lacks "a clear benchmark for determining who falls within the group." *Rivas*, 899 F.3d at 541 (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 239). And, this proposed group is defined based on its members being at risk of persecution. But

-10-

"persecutory conduct alone cannot define the group." *Id.* (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 242).

Having failed to establish past persecution, Fuentes is not entitled to a presumption of a well-founded fear of future persecution. *See Davila-Mejia*, 531 F.3d at 628. Fuentes argues that she established a well-founded fear of future persecution based on her testimony that "[s]he is afraid of the gangs, . . . the police[,] and the violence that currently plagues El Salvador." Pet'r's Br. at 21. She also cites documentary evidence she submitted "evidencing the lack of protection for women." *Id.* The Board found that evidence of the "general conditions of crime and violence" upon which Fuentes relied was "not sufficient for asylum purposes." Admin. Rec. at 4. As we have recognized, "[i]t is insufficient to allege a generalized fear of persecution because of isolated acts of violence to those other than the petitioner. Rather, [Fuentes] [had to] show a fear of particularized persecution as to [herself] or a group to which [s]he belongs." *Setiadi v. Gonzales*, 437 F.3d 710, 714 (8th Cir. 2006) (internal citation omitted). Because Fuentes failed to show a fear of particularized persecution on account of her membership in a social group, the Board did not err in denying Fuentes's claim for asylum based on a well-founded fear of future persecution.

"For these reasons, we conclude that the Board permissibly denied [Fuentes's] claim for asylum. It follows that [Fuentes] cannot meet the higher standard of proof for withholding of removal." *Rivas*, 899 F.3d at 542.[2]

### III. *Conclusion*

Accordingly, we deny the petition for review.

_____

_____

[2]Fuentes did not challenge the Board's denial of her application for CAT relief in her opening brief. Therefore, the issue is waived. *See Ngugi v. Lynch*, 826 F.3d 1132, 1139 n.3 (8th Cir. 2016).