# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2417
_____

Gemma Edith Rosales-Reyes; Alexa Abigail Barbosa-Rosales; Fabian Emanuel
Rosales-Reyes

*Petitioner*s

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*[1]

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: April 15, 2021
Filed: August 4, 2021

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Gemma Edith Rosales-Reyes (Petitioner) and her two minor children, Alexa
Abigail Barbosa-Rosales and Fabian Emanuel Rosales-Reyes (collectively,
Dependent Petitioners), natives and citizens of Mexico, petition this Court for review

_____

[1]Respondent Garland is automatically substituted for his predecessor pursuant
to Fed. R. App. P. 43(c)(2).

of a decision of the Board of Immigration Appeals (BIA) affirming an order of the Immigration Judge (IJ) denying their claims for asylum and withholding of removal under the Immigration and Nationality Act (INA) and protection under the Convention Against Torture (CAT). We deny the petitions.[2]

I.

On April 9, 2015, Petitioner sought admission at the San Ysidro, California port of entry. In an interview with United States Customs and Border Protection agents, Petitioner explained that she was afraid to return to Mexico. She was charged with being removable pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an alien who, at the time of application for admission, was not in possession of valid entry documents;[3] she and her two minor children were issued separate Notices to Appear;

---

[2]Currently before this Court are petitions arising from case numbers 208-594-176 (Petitioner's petition), 208-594-177 (Alexa Abigail Barbosa-Rosales's petition), and 208-594-178 (Fabian Emanuel Rosales-Reyes's petition). The BIA declined to address Dependent Petitioners' individual applications because they did not meaningfully challenge the IJ's denial of those applications. We similarly treat as waived Dependent Petitioners' individual challenges to the IJ's denial of their applications and the BIA's affirmance of that denial. See, e.g., Ramirez v. Sessions, 902 F.3d 764, 770 (8th Cir. 2018) (explaining that "'[i]f a petitioner fails to raise a particular issue when he appeals to the [BIA],' the petitioner has not exhausted his administrative remedies with respect to that issue." (citation omitted)). Consequently, we address Dependent Petitioners' requests for relief only to the extent that they relate to their status as derivative petitioners of their mother's petition.

[3]Petitioners argue that the IJ erred as a matter of law because while the IJ accepted Petitioner's pleadings at the December 28, 2015 hearing and found her to be removable, Dependent Petitioners did not set forth any pleadings and the IJ, expressly reserving his ruling on removability as to Dependent Petitioners, never made a finding as to the Dependent Petitioners' removability. However, Petitioners did not appeal this to the BIA, and as explained supra note 2, we address Dependent Petitioners' requests for relief only insofar as they derive from Petitioner's request.

and all three were paroled. Petitioner and her children each filed applications for asylum and withholding of removal under the INA, 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A), and relief under the CAT, 8 C.F.R. §§ 1208(16)(c), 1208.18, within a year of entering the United States. Petitioner also named Dependent Petitioners as derivatives of her application. After admitting the factual allegations against her and conceding the charges contained in her Notice to Appear on December 28, 2015, Petitioner appeared before an IJ on June 6, 2018, for a merits hearing. Petitioner was the sole witness at this hearing, and because the IJ deemed her testimony credible,[4] we rely on that testimony for this factual recitation. See, e.g., Ngengwe v. Mukasey, 543 F.3d 1029, 1031 (8th Cir. 2008).

While living in El Llano del Higo, a town within the municipality of Villa Purificación, and when walking to a store with her one-year-old son, Petitioner was pulled into a van by a group of men who placed a covering over her head. While her face was covered, the men pressed a live electrical wire against her one-year-old son's hand. The men then made statements revealing their familiarity with Petitioner's personal information, such as the names of her children and relatives and the fact that she worked at a local restaurant, before instructing her that she was to sell drugs for the Cartel Jalisco Nueva Generación (the Cartel) from that restaurant. They held Petitioner and her son for 24 hours without access to food, water, or a bathroom before giving Petitioner drugs to distribute, which she accepted but later disposed of. Once released, Petitioner did not report this encounter to the police because she believed that the police chief of Villa Purificación was a close friend of the Cartel's leader, Ruben Oseguera Cervantes (or "El Mencho") and worked with the Cartel. Instead, Petitioner traveled to Tijuana, Mexico, with her children before seeking admission at San Ysidro, California. Petitioner's parents, fearful of living in El Llano del Higo after their daughter's encounter, moved to

---

[4]The IJ noted two discrepancies in Petitioner's testimony: first, how long the men held her and her son captive, and second, when her uncle was killed. The IJ nevertheless found Petitioner to be credible, explaining that it would not make an adverse credibility finding on those discrepancies alone.

another area of Mexico, but Petitioner's uncle, who moved into Petitioner's house after she fled, was killed; bloodstains and shell casings found in the house suggested that Petitioner's uncle was shot there and then moved to a second location, where his body was later discovered. Petitioner did not present any evidence indicating that the police investigated her uncle's death, but the record does include his death certificate, which shows that he was killed by firearm projectiles.

At the hearing, Petitioner testified that she had suffered persecution, or alternatively torture, at the Cartel's behest because of her membership in a particular social group defined as "Mexican mothers who refuse to work for the Cartel."[5] Petitioner explained that the Cartel's power, which is prominent in 21 of the 31 Mexican states, coupled with the corruption present in many of the country's police forces, would allow the Cartel to identify and harm her and her children should they be removed to Mexico.

The IJ ultimately denied Petitioner's and Dependent Petitioners' applications for asylum and withholding of removal, treating Petitioner's arguments as Dependent Petitioners' arguments and finding that Petitioner failed to show she was harmed because of her membership in a particular social group or her political opinion. Further, the IJ denied CAT relief, explaining that although the Cartel wields significant power in Mexico, the Mexican government does not consent or acquiesce to and is not willfully blind to the Cartel's violence. The BIA dismissed Petitioner's and Dependent Petitioners' appeal, affirming the IJ's decision. Petitioner and Dependent Petitioners now petition this Court for review.

II.

Petitioner challenges the BIA's denial of asylum, withholding of removal, and protection under the CAT. "Only the BIA order is subject to our review, including

---

[5]Petitioner also testified that her refusal to distribute drugs on the Cartel's behalf constituted a political opinion for which she was persecuted, but she waived this claim by not appealing it to the BIA and this Court.

-4-

the IJ's findings and reasoning to the extent they were expressly adopted by the BIA." Ngengwe, 543 F.3d at 1032 (citation omitted). "When[, as here,] the [BIA] adopts the IJ's findings of fact but adds its own reasoning, we review the agency's fact-finding in both decisions for substantial evidence." Fuentes v. Barr, 969 F.3d 865, 870 (8th Cir. 2020) (per curiam) (citation omitted). "We review the BIA's legal determinations de novo and employ the deferential 'substantial evidence' standard when reviewing the BIA's factual determinations." Galloso v. Barr, 954 F.3d 1189, 1191 (8th Cir. 2020) (citation omitted). Accordingly, we will affirm the BIA's factual findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." Etchu-Njang v. Gonzales, 403 F.3d 577, 580 (8th Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(B)). We address each of Petitioner's arguments in turn, ultimately concluding that the BIA did not err.

A.

Petitioner argues that the Cartel persecuted her because of her "membership in a particular social group," 8 U.S.C. § 1101(a)(42)(A), namely "Mexican mothers who refuse to work for the Cartel." The INA bestows discretionary authority on the Attorney General to grant asylum to refugees. See id. § 1158(b)(1). A "refugee," as defined by § 1101(a)(42)(A), is:

> any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

This "discretionary judgment whether to grant relief under the asylum provisions 'shall be conclusive unless manifestly contrary to the law and an abuse of discretion.'" Etchu-Njang, 403 F.3d at 580 (quoting 8 U.S.C. § 1252(b)(4)(D)). "An applicant for asylum may prove eligibility by establishing past persecution on account of one of the statutorily enumerated grounds, and if the applicant shows past

-5-

persecution, he or she will be presumed to have a well-founded fear of future persecution." Fuentes, 969 F.3d at 871 (citation omitted). "Under the [BIA]'s analysis, whether an asserted group qualifies as a 'particular social group' turns on whether the group is '(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'" Fuentes, 969 F.3d at 871 (citation omitted). Whether Petitioner's proposed group constitutes a "particular social group" is a legal question which we review de novo, see Ngengwe, 543 F.3d at 1033 (reviewing the BIA's finding that the petitioner's proposed social group did not constitute a "particular social group" de novo), but we review the BIA's underlying factual findings for substantial evidence, see Fuentes, 969 F.3d at 870.

Although we review the determination de novo, we lend deference to the BIA's reasonable interpretation of "particular social group." De Guevara v. Barr, 919 F.3d 538, 540 (8th Cir. 2019) (citation omitted). "As to the social group's particularity, it must 'be "defined by characteristics that provide a clear benchmark for determining who falls within the group."'" Fuentes, 969 F.3d at 871 (citations omitted). "Whether a given particular social group is perceived as distinct by the society of which it is part depends on evidence that the society makes meaningful distinctions based on the common immutable characteristics defining the group." Id. (citation omitted). "Persecutory conduct aimed at a social group cannot alone define the group, which much exist independently of the persecution." De Guevara, 919 F.3d at 540.

Here, the BIA, like the IJ, found that Petitioner's proposed social group lacked the requisite particularity and social distinction because the evidence demonstrated that the Cartel victimizes *any* person who opposes it and not that the Cartel specifically targets Mexican mothers who oppose it. Although the record makes clear that the Cartel seized an opportunity to recruit a Mexican mother, who was vulnerable while walking alone with her one-year-old son, to distribute drugs for it, the record also shows that the Cartel indiscriminately victimizes anyone capable of furthering its operations. Petitioner submitted substantial evidence that in recent

-6-

years the Cartel has dominated much of Mexico and that, in the states where the Cartel is present, violence is also present. Even if we assume that being a Mexican mother creates a "clear benchmark" of who is or is not within the social group—i.e., that particularity exists—Petitioner still presents no evidence that this group is "perceived as distinct by the society of which it is a part" and that "society makes meaningful distinctions based on the common immutable characteristics defining the group." See Fuentes, 969 F.3d at 871. Perhaps the only commonality shared by Mexican mothers who refuse the Cartel's demands is that those mothers will face violence for their opposition. However, this is insufficient to meet the statutorily enumerated ground. See De Guevara, 919 F.3d at 540 (persecutory conduct aimed at a group cannot alone define that group).

While we are cognizant of the inherent danger of living alongside the Cartel and sympathize with Petitioner's experience, we find that Petitioner's proposed social group, i.e., "Mexican mothers who refuse to work for the Cartel," is not sufficiently particularized or socially distinct. See Fuentes, 969 F.3d at 871. Additionally, insofar as Petitioner relies on her uncle's death as evidence of persecution, we have previously explained that such evidence is insufficient. See Cano v. Barr, 956 F.3d 1034, 1039-40 (8th Cir. 2020) (finding that evidence of isolated violence against a family member cannot establish persecution sufficient for asylum because a "pattern of persecution tied to the petitioner" is required) (citation omitted). Therefore, we find that the BIA did not err in denying Petitioner's asylum application.

B.

Petitioner also challenges the BIA's denial of withholding of removal. Our analysis of the BIA's denial of Petitioner's application for withholding of removal mirrors that of Petitioner's asylum claim. As with an application for asylum, to achieve withholding of removal under the INA, an applicant must show that she will "face persecution upon repatriation on account of one of the five protected grounds, including membership in a social group." Constanza v. Holder, 647 F.3d 749, 753

(8th Cir. 2011) (per curiam) (citing 8 U.S.C. § 1231(b)(3)(A)). Petitioner again relies on her status as a "Mexican mother who refuses to work for the Cartel." Here, because Petitioner was unable to demonstrate eligibility for asylum, it follows that she is also unable to demonstrate eligibility for withholding of removal. Ultimately, we discern no error in the BIA's denial of Petitioner's application for withholding of removal.

## C.

Petitioner finally argues that the BIA erred in denying CAT relief by failing to adequately consider Petitioner's submitted evidence, namely the country condition reports which allegedly show that Petitioner will be tortured with the acquiescence of low-level public officials like police officers upon her removal. "To qualify for relief under the CAT, an alien must show 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" Malonga v. Mukasey, 546 F.3d 546, 554-55 (8th Cir. 2008) (quoting 8 C.F.R. § 1208.16(c)(2)). Torture is defined, in part, as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person." 8 C.F.R. § 1208.18(a)(1). The alien must also "show that the torture would be 'at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity.'" Bautista-Bautista v. Garland, No. 20-1534, 2021 WL 2793224, at *3 (8th Cir. July 6, 2021) (quoting 8 C.F.R. § 1208.18(a)(1)). "A government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it, but it does cross the line into acquiescence when it shows willful blindness to the torture of citizens by third parties." Moallin v. Barr, 980 F.3d 1207, 1210 (8th Cir. 2020) (citation omitted). Finally, where it is possible for a petitioner to relocate upon removal to avoid torture, CAT relief is inappropriate. See Bautista-Bautista, 2021 WL 2793224, at *3; see also 8 C.F.R. § 1208(b)(1)(i)(B).

In Bautista-Bautista, we found that CAT relief was inappropriate because the petitioner could safely relocate upon removal. Here we similarly find persuasive the

fact that Petitioner can safely relocate, joining her parents in a Mexican state free from the Cartel's control. Ultimately, we conclude that the BIA's determinations are supported by substantial evidence and affirm the BIA's denial of CAT relief. See <u>Galloso</u>, 954 F.3d at 1191.

## III.

Finding no error, we deny the petitions for review.

_____