# Matter of L-E-A-, Respondent

*Decided May 24, 2017*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Whether a particular social group based on family membership is cognizable depends on the nature and degree of the relationships involved and how those relationships are regarded by the society in question.

(2) To establish eligibility for asylum on the basis of membership in a particular social group composed of family members, an applicant must not only demonstrate that he or she is a member of the family but also that the family relationship is at least one central reason for the claimed harm.

FOR RESPONDENT: Mei F. Chen, Esquire, San Jose, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: George R. Martin, Associate Legal Advisor

BEFORE: Board Panel: GREER, MALPHRUS, and LIEBOWITZ, Board Members.

GREER, Board Member:

In a decision dated September 10, 2013, an Immigration Judge found the respondent removable and denied his applications for asylum and withholding of removal and his request for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988). The respondent has appealed from that decision. The appeal will be dismissed in part and the record will be remanded for further proceedings.

The question in this case is whether the respondent, who claims membership in a particular social group composed of his family, has established eligibility for asylum under section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158 (2012). We conclude that while family may be a particular social group, membership in such a group does not necessarily establish a nexus to a ground protected under the Act. Rather, the respondent must demonstrate that the family relationship is at least one central reason for the claimed harm to establish eligibility for asylum on that basis.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who entered the United States for the first time in 1998 and departed under a grant of voluntary departure in May 2011.  That same month, the respondent returned to his parents' home in Mexico City, Mexico.  Previously, members of La Familia Michoacana, a criminal cartel, had approached the respondent's father, who owned a store that sold groceries and general merchandise in the neighborhood.  The cartel members asked if they could sell drugs in the store, which the cartel viewed as a favorable distribution location.  The respondent's father refused to allow the cartel to sell drugs in his store.

About a week after the respondent returned to Mexico, he was running an errand with his cousin and a nephew when they heard gunshots coming from inside a car.  A week later, the respondent was approached by the same car.  Its four occupants identified themselves as members of La Familia Michoacana.  They asked if he would sell drugs for them at his father's store because they liked the store's location.  The respondent declined, and the cartel members indicated that he should reconsider.

The following week, the respondent was again approached by the car.  The four occupants, who were wearing masks, tried to grab him and put him in the car, but he was able to get away.  Soon after, the respondent left for the border and was ultimately successful in crossing into the United States.  Members of La Familia Michoacana contacted the respondent's father and claimed to have kidnapped the respondent, which his father was able to confirm was untrue.  The respondent's father still operated the store, but he began paying "rent" to La Familia Michoacana, which made it no longer profitable.  The respondent's family members who live in Mexico, including his parents, have not been subjected to additional incidents of harm.

The respondent believes that he was targeted by members of La Familia Michoacana because of his membership in the particular social group comprised of his father's family members, and he asserted a fear of persecution in the future on this basis.  The Immigration Judge found the respondent credible, but she concluded that La Familia Michoacana was interested in distributing illegal drugs at the store and increasing its profits, rather than being motivated to harm his father's family members based on their membership in the family itself.  In particular, the Immigration Judge found that the persecutor's motive related to ownership of the store and, notably, that if the store were to be sold, they would target the new owner.  On appeal, the respondent argues that he experienced harm rising to the level of persecution based on his membership in the particular social group of his father's family and that he has a well-founded fear of harm on this basis in the future if returned to Mexico.

We requested supplemental briefing in this case, and the respondent, the Department of Homeland Security ("DHS"), and amici curiae responded. Both parties agree that the immediate family unit of the respondent's father qualifies as a cognizable particular social group. They also agree that if family membership is a central reason for persecuting an asylum applicant, nexus may be established. In addition, the respondent argues that the Immigration Judge did not make complete findings of fact with regard to his application for protection under the Convention Against Torture. The amici curiae generally support the arguments of the respondent.[1]

## II. ANALYSIS

### A. Family as a Particular Social Group

We agree with the parties that the members of an immediate family may constitute a particular social group. We have long recognized that family ties may meet the requirements of a particular social group depending on the facts and circumstances in the case. *Matter of C-A-*, 23 I&N Dec. 951, 959 (BIA 2006) ("Social groups based on innate characteristics such as sex or family relationship are generally easily recognizable and understood by others to constitute social groups."), *clarified by Matter of M-E-V-G-*, 26 I&N Dec. 227 (BIA 2014), *and Matter of W-G-R-*, 26 I&N Dec. 208 (BIA 2014); *Matter of Acosta*, 19 I&N Dec. 211, 233 (BIA 1985) (stating that "kinship ties" is a common, immutable characteristic), *modified on other grounds*, *Matter of Mogharrabi*, 19 I&N Dec. 439, 441 (BIA 1987); *see also Vumi v. Gonzales*, 502 F.3d 150, 155 (2d Cir. 2007) (acknowledging the Board's long-standing recognition of family members as a possible particular social group). The circuit courts have also held that family may constitute a particular social group. *See Rios v. Lynch*, 807 F.3d 1123, 1128 (9th Cir. 2015); *Crespin-Valladares v. Holder*, 632 F.3d 117, 124−25 (4th Cir. 2011); *Al-Ghorbani v. Holder*, 585 F.3d 980, 995 (6th Cir. 2009); *Ayele v. Holder*, 564 F.3d 862, 869 (7th Cir. 2009); *Gebremichael v. INS*, 10 F.3d 28, 36 (1st Cir. 1993); *see also Ramirez-Mejia v. Lynch*, 794 F.3d 485, 492−93 (5th Cir. 2015).

A determination whether a social group is cognizable is a fact-based inquiry made on a case-by-case basis, depending on whether the group is immutable and is recognized as particular and socially distinct in the relevant society. *See Matter of M-E-V-G*, 26 I&N Dec. at 242; *Matter of W-G-R-*, 26 I&N Dec. at 211–12, *vacated in part and remanded on other grounds by Reyes v. Lynch*, 842 F.3d 1125 (9th Cir. 2016). Not all social groups that involve family members meet the requirements of particularity and social

---

[1] We acknowledge and appreciate the briefs submitted by the parties and amici curiae.

distinction. *See, e.g.*, *Jie Lin v. Ashcroft*, 377 F.3d 1014, 1028 (9th Cir. 2004) (recognizing that "some attenuated family links will not *per se* suffice to confer 'particular social group' membership"); *Matter of S-E-G-*, 24 I&N Dec. 579, 585 (BIA 2008) (holding that a group comprised of "'family members,' which could include fathers, mothers, siblings, uncles, aunts, nieces, nephews, grandparents, [and] cousins" of "Salvadoran youth who have been subjected to recruitment efforts by MS-13 and who have rejected or resisted membership in the gang" is too amorphous to constitute a cognizable particular social group), *clarified by Matter of M-E-V-G-*, 26 I&N Dec. 227, *and Matter of W-G-R-*, 26 I&N Dec. 208. We agree with the DHS's argument that the inquiry in a claim based on family membership will depend on the nature and degree of the relationships involved and how those relationships are regarded by the society in question.

Because the facts of this case present a valid particular social group, we need not further address the circumstances regarding family status that would or would not support finding that a family is a particular social group. An applicant for asylum has the burden to establish a cognizable particular social group, his membership in that group, and persecution or fear of persecution on account of his membership in that group. *Matter of W-G-R-*, 26 I&N Dec. at 223. In consideration of the facts of this case and the agreement of the parties, we have no difficulty identifying the respondent, a son residing in his father's home, as being a member of the particular social group comprised of his father's immediate family. The key issue we must consider is whether the harm he experienced or fears is on account of his membership in that particular social group.

## B. Nexus

An asylum applicant's membership in a family-based particular social group does not necessarily mean that any harm inflicted or threatened by the persecutor is because of, or on account of, the family membership. *See, e.g.*, *id.* at 218 ("[W]e must separate the assessment whether the applicant has established the existence of one of the enumerated grounds (religion, political opinion, race, ethnicity, and particular social group) from the issue of nexus. The structure of the Act supports preserving this distinction, which should not be blurred . . . ."). A persecution claim cannot be established if there is no proof that the applicant or other members of the family were targeted because of the family relationship. *See Matter of N-M-*, 25 I&N Dec. 526, 530 (BIA 2011) (stating that an applicant "must provide some evidence that an alleged persecutor is motivated by a victim's protected trait"). If the persecutor would have treated the applicant the same if the protected characteristic of the family did not exist, then the applicant has not

established a claim on this ground. *See id.* at 531 (explaining that an applicant "must demonstrate that the persecutor would not have harmed the applicant if the protected trait did not exist").

Moreover, under section 208(b)(1)(B)(i) of the Act, membership in the particular social group must be "at least one central reason" for the persecutor's treatment of the applicant. *See Matter of J-B-N- & S-M-*, 24 I&N Dec. 208, 212 (BIA 2007). The protected trait, in this case membership in the respondent's father's family, "cannot play a minor role"—that is, "it cannot be incidental [or] tangential . . . to another reason for harm." *Id.* at 214.

The question of a persecutor's motive will involve a particularized evaluation of the specific facts and evidence in an individual claim. *See Matter of N-M-*, 25 I&N Dec. at 532 ("A persecutor's actual motive is a matter of fact to be determined by the Immigration Judge . . . ."). Immigration Judges should consider both direct and circumstantial evidence regarding a persecutor's motive, *id.*, and may make reasonable inferences based on the evidence in the record. *See Matter of D-R-*, 25 I&N Dec. 445, 453 (BIA 2011), *remanded on other grounds*, *Radojkovic v. Holder*, 599 F. App'x 646 (9th Cir. 2015). While some scenarios will present a clear answer, others will require a more nuanced evaluation.

It is clear that nexus would be established based on family membership where a persecutor is seeking to harm the family members because of an animus against the family itself. For illustrative purposes, we consider the well-known historical scenario of the Bolshevik assassination of Czar Nicholas II, his wife, Czarina Alexandra, and their five children after he abdicated the throne in 1917. The immediate family, as well as other family members, were killed between 1918 and 1919. *See Romanov*, 19 *Encyclopædia Britannica, Inc.* 553−54 (1971). While there were political reasons why they were endangered and killed, it would be difficult to say either that these individuals did not form a particular social group or that their family membership was not at least one central reason for their persecution. This is a classic example of a persecutor whose intent, for at least one central reason, was to overcome the protected characteristic of the immediate family.[2]

---

[2]   In *Matter of Acosta*, 19 I&N Dec. at 222, our original definition of persecution included "harm or suffering . . . inflicted upon an individual in order to punish him for possessing a belief or characteristic a persecutor sought to overcome." However, in *Matter of Kasinga*, 21 I&N Dec. 357, 365 (BIA 1996), we clarified that a punitive intent is not required and held, instead, that the focus is only whether the persecutor intended to "overcome [the protected] characteristic of the victim." *Cf. Pitcherskaia v. INS*, 118 F.3d 641, 646 (9th Cir. 1997) ("Neither the Supreme Court nor this court has construed the Act as imposing a requirement that the alien prove that her persecutor was motivated by a desire to punish or inflict harm.").

However, if animus against the family per se is not implicated, the question becomes what motive or motives cause the persecutor to seek to harm members of an individual's family. In other words, is the persecutor's motive for harming the applicant his or her family status or another factor? The answer to this question depends on the reasons that generate the dispute.

There are other circumstances where the evidence establishes that one central reason for the applicant's harm was his or her family status. These often arise in cases where the family status is connected to another protected ground, particularly where there is a political motive, aside from dynastic succession, that is intertwined with or underlies the dispute. *See, e.g.*, *Ayele*, 564 F.3d at 869−72 (regarding a claim of membership in a particular social group based on the applicant's family, which had been targeted because of political affiliation and ethnicity); *Vumi*, 502 F.3d at 154−56 (regarding a claim based on membership in the family of a person suspected of participating in the assassination of the former president of the Democratic Republic of Congo); *Gebremichael*, 10 F.3d at 35−36 (holding that the applicant had established persecution on account of his family because he was accused of aiding the escape of his brother, whom the Ethiopian Government regarded as an enemy).

However, nexus is not established simply because a particular social group of family members exists and the family members experience harm. Thus, the fact that a persecutor has threatened an applicant and members of his family does not necessarily mean that the threats were motivated by family ties. *See Marin-Portillo v. Lynch*, 834 F.3d 99, 102 (1st Cir. 2016) (finding that the persecutor, who was jailed for murdering the applicant's father, threatened the applicant and his family in order to retaliate or to deter them from seeking revenge against him, rather than because of their family membership). An applicant cannot establish a claim simply by showing that he and some other family members faced similar harm. *See, e.g.*, *Perlera-Sola v. Holder*, 699 F.3d 572, 576 (1st Cir. 2012) (stating that the "'kinship' criterion . . . applies only where the *motivation* for persecution is *kinship* and not because multiple family members happen to be persecuted for a common reason but the animus is not kinship").

Further, the fact that a persecutor targets a family member simply as a means to an end is not, by itself, sufficient to establish a claim, especially if the end is not connected to another protected ground. *See, e.g.*, *Mendoza-Alvarez v. Holder*, 714 F.3d 1161, 1165 (9th Cir. 2013) ("If someone suffers harm on grounds that are associated with group membership but also apply to many others, then the harm is not because of membership in a particular social group . . . ."). Circumstances such as these may indicate that family membership was not at least one central reason that the applicant was harmed. *Ramirez-Mejia*, 794 F.3d at 493 (concluding that "the evidence

that gang members sought information from [the applicant] about her brother, without more, does not support her claim that the gang intended to persecute her on account of her family").

For example, in *Cambara-Cambara v. Lynch*, 837 F.3d 822 (8th Cir. 2016), the applicants were wealthy landowners, and gang members targeted various members of their family in Guatemala, making extortionate demands. The Immigration Judge and the Board determined that no nexus between the harm and their status as family members had been established. The court affirmed, stating that the applicants "provided no proof that the criminal gangs targeted members of the family *because* of family relationships, as opposed to the fact that, as prosperous businessmen, they were obvious targets for extortionate demands." *Id.* at 826. Similarly, in *Ayala v. Holder*, 683 F.3d 15, 17 (1st Cir. 2012), the applicant claimed that she was harmed based on her membership in a particular social group comprised of "a family that opposed guerilla warriors." But the court disagreed with her argument, stating that "there is no evidence to support the claim that guerillas targeted [the applicant's] family members on account of their membership in the family." *Id.*[3]

According to the facts found by the Immigration Judge in this case, the cartel attempted to coerce the respondent's father into selling contraband in his store. When he refused, the cartel approached the respondent to sell its product because he was in a position to provide access to the store, not because of his family membership. The Immigration Judge's findings in this regard are not clearly erroneous.[4] *See Matter of D-R-*, 25 I&N Dec. at 453.

As the Immigration Judge determined, the respondent was targeted only as a means to achieve the cartel's objective to increase its profits by selling drugs in the store owned by his father. *See Ramirez-Mejia*, 794 F.3d at 492−93. Therefore, the cartel's motive to increase its profits by selling contraband in the store was one central reason for its actions against the respondent and his family. Any motive to harm the respondent because he was a member of his family was, at most, incidental.[5] In this regard, we point

---

[3]  We recognize that the United States Court of Appeals for the Fourth Circuit has addressed the interplay of family as a particular social group and nexus in a series of cases where it found that the applicants satisfied the nexus requirement. *See, e.g.*, *Cruz v. Sessions*, 853 F.3d 122, 129−30 (4th Cir. 2017); *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949−50 (4th Cir. 2015). While it is not clear how the Fourth Circuit would apply that precedent to the facts here, this case does not arise in the Fourth Circuit.

[4]  This case illustrates the importance of complete findings of fact regarding motive, which the Immigration Judge made here. *See Matter of S-H-*, 23 I&N Dec. 462, 465 (BIA 2002).

[5]  We accept the parties' position that a separate, independent inquiry into the motivation of a persecutor towards the respondent's father, as the defining or primary family member, is not part of the nexus calculus. Nonetheless, the scope of the motive inquiry necessarily

out that the evidence does not indicate that the persecutors had any animus against the family or the respondent based on their biological ties, historical status, or other features unique to that family unit. *See Cambara-Cambara*, 837 F.3d at 826 (finding no proof that the applicants' family was different from any other family that experienced gang violence). Notably, the Immigration Judge also found that the cartel would have gone after any family who owned a business there. In fact, after the respondent departed for the United States, the cartel coerced his father into paying "rent" to them. This conduct constitutes criminal extortion and further indicates that the cartel's motivation was not based on the family relationship.

It is significant that the cartel directly asked the respondent to sell their drugs in the store. This act bears no tie to an enumerated ground but is rather a direct expression of the cartel's motive to increase its profits by selling contraband in the store. Accordingly, the Immigration Judge's finding that the gang was not motivated to harm the respondent based on family status is not clearly erroneous.

## III.  CONCLUSION

We conclude that the respondent did not establish that his membership in a particular social group comprised of his father's family members was at least one central reason for the events he experienced and the harm he claims to fear in the future. Accordingly, the respondent's appeal from the Immigration Judge's denial of his application for asylum will be dismissed. However, we agree with the respondent that the Immigration Judge did not make complete findings of fact needed to assess his claim under the Convention Against Torture. We will therefore remand the record for that purpose. Since we are remanding the record for further proceedings regarding the respondent's request for protection under the Convention Against Torture, the parties may also address on remand the significance, if any, of *Barajas-Romero v. Lynch*, 846 F.3d 351 (9th Cir. 2017).

**ORDER:**  The appeal is dismissed in part.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

encompasses the context in which a family member is identified for harm and how that relates to the interest in the applicant. We view this as a single inquiry.