[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14691
Non-Argument Calendar
_____

Agency No. A206-005-099

DELMAR ANTONIO CORRALES-HERNANDEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 18, 2020)

Before JILL PRYOR, LUCK and DUBINA, Circuit Judges.

PER CURIAM:

Petitioner Delmar Corrales-Hernandez ("Corrales") seeks review of a final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of Corrales's application for asylum, withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). Corrales argues that the BIA erred in determining that there was no nexus between his past persecution or fear of future persecution by the MS-13 gang and a protected ground of membership in a particular social group of his family.

## I.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). Where the BIA agrees with the IJ's reasoning, we will also review the IJ's decision to that extent. *Id.* Here, the BIA did not expressly adopt the IJ's decision but agreed with the IJ's findings regarding a lack of nexus between any past or future persecution and a protected ground. Thus, we review both decisions to that extent. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010).

On petition for review of the BIA's decision, we review legal questions *de novo*. *Zhou Hua Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303, 1307 (11th Cir. 2013). Factual determinations are reviewed under the highly deferential substantial-

2

evidence test, which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*). "We must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1027 (quotation marks omitted). To reverse administrative factual findings, we must determine that the record "compels" reversal, not merely supports a different conclusion. *Id.* "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the [agency's] findings." *Id.*

To adequately raise an issue on appeal, the party must "specifically and clearly identif[y] it in its opening brief; otherwise, the claim will be deemed abandoned and its merits will not be addressed." *Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 530 (11th Cir. 2013) (quotation marks omitted), *abrogated on other grounds by Nasrallah v. Barr*, 140 S. Ct. 1683 (2020).

An applicant for asylum must meet the Immigration and Nationality Act's ("INA") definition of a refugee. INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The INA defines a refugee as a person "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of" his home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political

3

opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). The alien bears the burden to establish that he is a refugee. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005).

Thus, to establish eligibility for asylum, a petitioner must demonstrate either past persecution, or a well-founded fear of future persecution, based on a statutorily listed protected ground. *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010). The alien must present "specific, detailed facts showing a good reason to fear that he will be singled out for persecution on account of" the statutorily listed factor. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006) (quotation marks omitted).

The asylum applicant must prove he suffered persecution on account of a protected ground. *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1158 (11th Cir. 2019). This connection between persecution and the statutorily protected ground is known as the "nexus" requirement. *Id.* To satisfy this nexus requirement, the asylum applicant must demonstrate that one of those enumerated grounds was or will be "at least one central reason" for his persecution. *Id.* (quoting INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i) (as amended by the REAL ID Act § 101(a)(3)) (effective May 11, 2005, for "applications for asylum, withholding, or other relief from removal made on or after" that effective date)). We have not specifically construed the term "central" in any published decision,

4

but we have stated that one of the five statutory grounds need not be the only motivation for the persecution. *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007) (reaffirming the "mixed-motive" theory of nexus). "Rather, it is by now well-established in our case law that an applicant can establish eligibility for asylum as long as he can show that the persecution is, at least in part, motivated by a protected ground." *Id.* (quotation marks and emphasis omitted). However, evidence consistent with acts of private violence, which merely shows that the petitioner was the victim of criminal activity or mistreated due to a refusal to cooperate with a criminal group, does not show a nexus to a protected ground. *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1310-11 (11th Cir. 2013).

## II.

In *Perez-Sanchez*, we considered whether the applicant established that persecution by a cartel in Mexico was based on his family ties. 935 F.3d at 1158. There, the record established that members of the Gulf Cartel broke into the applicant's home and told him they were there to collect a debt based on his estranged father-in-law's loss of a shipment of cocaine, although neither Perez-Sanchez nor his partner had knowledge of the man or his involvement with the cartel. *Id.* at 1150–51. After the members beat Perez-Sanchez, he agreed at gunpoint to pay a monthly sum, and after running out of money, fled to the United States. *Id.* at 1151. The BIA acknowledged that "the issue of nexus [was] close,"

5

because Perez-Sanchez's "relationship to his father-in-law [was] a reason for the harm and extortion he experienced," but nonetheless agreed with the IJ that the family relationship was not a central reason for Perez-Sanchez's suffering. *Id.* at 1152 (quotation marks omitted). We held that the BIA's decision was not based on substantial evidence because it was "impossible to disentangle his relationship to his father-in-law from the Gulf Cartel's pecuniary motives: they [were] two sides of the same coin." *Id.* at 1158. We noted that the record was replete with evidence that the Gulf Cartel sought out and continuously extorted Perez-Sanchez because of his father-in-law's past affiliation with the cartel. *Id.*

In contrast, in *Rodriguez*, we denied Rodriguez's petition for review, stating that he failed to establish a nexus between a particular social group (landowners, or his family, members of which had sought law enforcement help against drug traffickers) and the harm he feared. 735 F.3d at 1310-11. In that case, drug traffickers approached Rodriguez's father about growing illegal drugs on the family farm, which he refused to do. *Id.* at 1305. A few years later, the drug traffickers murdered Rodriguez's father. *Id*. In addition, Rodriguez's uncle was kidnapped and tortured until Rodriguez's family paid a ransom, and his cousin, who testified against the drug traffickers for the murder of Rodriguez's father, was himself murdered. *Id.* at 1306. In denying Rodriguez's petition, we stated that Rodriguez failed to show that the harm he feared at the hands of the drug

traffickers arose from his membership in a particular social group. *Id.* at 1310. Rather, the record showed that "the members of his family were killed or kidnapped due to their failure to cooperate with the drug traffickers or were the victims of criminal activity." *Id*. at 1310-1311.

Likewise, in *Rivera v. U.S. Attorney General*, we denied a petition for review of an asylum application because there was substantial evidence to support the IJ's finding that the motive of the FARC, a Colombian rebel group, for persecuting the petitioners' wealthy family was "to raise funds," and was not based on political opinion. 487 F.3d 815, 821–23 (11th Cir. 2007). We reasoned that country conditions evidence established that business owners like the applicants, once targeted for taxation, would be harassed until they paid a "war tax," but that even a grudging payment of the war tax ordinarily ended the harassment. *Id.* at 822.

## III.

BIA precedent analyzing the nexus requirement requires the BIA and IJ to assess the alleged persecutor's motives as a factual matter. *See Matter of W-G-R-*, 26 I. & N. Dec. 208, 223–24 (BIA 2014) ("Whether that nexus [to a protected ground] exists depends on the views and motives of the persecutor."); *Matter of N-M-*, 25 I. & N. Dec. 526, 532 (BIA 2011) ("A persecutor's actual motive is a matter of fact to be determined by the Immigration Judge and reviewed by [the

Board] for clear error."). In *Matter of L-E-A-*, the BIA denied the noncitizen's asylum application because of the absence of the necessary nexus between his membership in the group and the persecution. *Matter of L-E-A-*, 27 I. & N. Dec. 40, 43–47 (BIA 2017). There, a drug cartel in Mexico attempted to coerce the asylum applicant's father into selling contraband in his store. *Id.* at 46. When he refused, the cartel approached the asylum applicant to sell its product. *Id.* The BIA concluded that the asylum applicant was targeted to sell its product because of his position, which allowed him access to the store, not because of his family membership. *Id.* at 47. Thus, the cartel targeted him solely to achieve its objective to increase its profits by selling drugs in the store owned by his father. *Id.*

The BIA stated that "[a] persecution claim cannot be established if there is no proof that the applicant or other members of the family were targeted because of the family relationship." *Id.* at 43. "An asylum applicant's membership in a family-based particular social group does not necessarily mean that any harm inflicted or threatened by the persecutor is because of, or on account of, the family membership." *Id.* Furthermore, "[i]f the persecutor would have treated the applicant the same if the protected characteristic of the family did not exist, then the applicant has not established a claim on this ground." *Id.* at 43-44. The BIA also noted that the question of a persecutor's motive "will involve a particularized evaluation of the specific facts and evidence in an individual claim." *Id.* at 44. It

8

stated that the "nexus would be established based on family membership where a persecutor is seeking to harm the family members because of an animus against the family itself." *Id.* "[N]exus is not established simply because a particular social group of family members exists and the family members experience harm." *Id.* at 45.[1] Our circuit has not adopted the nexus standard as articulated in *Matter of L-E-A-* in a published decision. However, we will defer to the agency's reasonable construction of ambiguous terms in the INA. *See Alim v. Gonzales*, 446 F.3d 1239, 1247 (11th Cir. 2006); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Counsel, Inc.*, 467 U.S. 837, 843–44, 104 S. Ct. 2778, 2782–83 (1984).

## IV.

Here, the record does not compel a conclusion that Corrales's alleged persecution was or would be on account of his membership in a particular social group of his family. Instead, the evidence supports the BIA's determination that the gang members were motivated by criminality and financial gain, not by any protected ground. *Cf. Rodriguez*, 735 F.3d at 1305, 1310–11 (finding that the motive of the drug traffickers was expanding their enterprise by using the family farm to grow illegal drugs; motive was not based on membership in the particular

---

[1] The acting Attorney General affirmed the BIA's analysis of the required nexus between alleged persecution and the alleged protected ground, clarifying that most nuclear families are not inherently socially distinct and therefore do not qualify as particular social groups. *Matter of L-E-A-,* 27 I. & N. Dec. 581, 586, 597 (A.G. 2019).

social group of his family or landowners). The gang members repeatedly asked Corrales to join the gang and sell drugs and tried to extort money from him by threatening to kidnap his nephews. As the BIA found, Corrales fails to establish that his membership in his family was at least one central reason for the persecution he endured and fears if he returns to Honduras. Accordingly, the record evidence supports the conclusion that the threats he received and the harm done to his family were acts of private violence and constituted general criminal activity, which is not sufficient to show a nexus to a protected ground. *See* Ruiz, 440 F.3d at 1258. Thus, the record does not compel reversal of the BIA's determination that Corrales failed to meet this burden of establishing eligibility for asylum, and we deny Corrales's petition.[2]

**PETITION FOR REVIEW DENIED**.

---

[2] Furthermore, because Corrales failed to raise any argument on appeal concerning his withholding of removal and CAT claims, we deem these issues abandoned. *See Cole*, 712 F.3d at 530.