# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 2, 2021

Lyle W. Cayce
Clerk

No. 19-60513

Narcedalia Del Carmen Lopez De Villeda; Joel Eduardo Villeda-Lopez; William Alfredo Villeda-Lopez,

*Petitioners*,

*versus*

Robert M. Wilkinson, Acting U.S. Attorney General,

*Respondent.*

---

Petition for Review of an Order of the
Board of Immigration Appeals
Agency Nos. A 208-744-332/333/334

---

Before Davis, Southwick, and Costa, *Circuit Judges*.

Per Curiam:*

Petitioners, Narcedalia Del Carmen Lopez De Villeda (Lopez De Villeda) and her sons Joel Eduardo Villeda-Lopez and William Alfredo Villeda-Lopez, seek review of a final order of removal from the Board of Immigration Appeals (BIA). The BIA affirmed the Immigration Judge (IJ)'s

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-60513

decision denying Petitioners' request for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), and the BIA also denied Petitioners' motion to remand for further proceedings. Petitioners contend that the BIA erred when it rejected their claims that they were entitled to asylum and withholding of removal because they were persecuted for their social group and Lopez De Villeda's political opinion. Petitioners also assert that the BIA violated their due process rights by failing to remand their case based on their prior counsel's ineffective assistance.[1] As set forth below, we conclude that the BIA did not err; therefore, we AFFIRM.

## I. BACKGROUND

Petitioners, natives and citizens of El Salvador, entered the United States on or about December 4, 2015, without being admitted or paroled. After being served with notices to appear, Petitioners appeared before the IJ and filed applications for asylum, withholding of removal, and protection under the CAT. The IJ conducted a hearing to address Petitioners' applications, at which Lopez De Villeda testified on behalf of herself and two sons.

Lopez De Villeda testified that her husband, Rafael Alfredo Villeda Lemus (Rafael), was murdered in October 2015 and that she thought he might have been murdered because he refused to transport gang members and their goods or refused to pay them a bribe. Lopez De Villeda stated that Rafael, who owned a pickup truck, was part of a cooperative that transported goods and people, and that gang members would ask Rafael for transportation

---

[1] Petitioners did not brief the basis for the BIA's dismissal of their claims for protection under the CAT; therefore, this issue is waived. *See Monteon-Camargo v. Barr*, 918 F.3d 423, 428 (5th Cir. 2019).

or money. If Rafael refused, then the gang members would threaten his life. On one occasion, Lopez De Villeda testified, gang members came to their house and when Rafael refused to transport them, they shoved him into her and demanded that Lopez De Villeda transport them instead. She refused and the gang members threatened the family. Lopez De Villeda also testified that other pickup truck owners from the transportation cooperative faced similar threats and that some had been killed.[2] According to Lopez De Villeda, gang members threatened these pickup truck owners because they could provide transportation and were thought to have money. Additionally, Lopez De Villeda testified that she had a store and gang members would ask for money and items, which she would have to give to them.

Lopez De Villeda said that at Rafael's funeral, an unknown woman approached her and told her in a threatening manner that if she and her sons returned home, they would be killed. As a result, Lopez De Villeda and her sons left, and they eventually came to the United States. Lopez De Villeda testified that the incidents involving the gangs were never reported to the police. She also conceded that she had been threatened on only two occasions: when the gang members came to the house and at Rafael's funeral. Lopez De Villeda also stated that she had not received any threats after arriving to the United States.

Petitioners sought asylum and withholding of removal based on: (1) membership in a particular social group as "[t]he wife and children of . . . Rafael Alfredo Villeda Lemus," and (2) Lopez De Villeda's political opinion of being "against the criminality [and] in favor of law and order." The IJ denied Petitioners' applications for asylum, withholding of removal,

---

[2] Since her arrival in the United States, Lopez De Villeda had "learned that people . . . have been murdered" because they refused to provide transportation to gang members and that entire families were killed.

and protection under the CAT, and ordered their removal to El Salvador. On the asylum claims, the IJ determined that Lopez De Villeda, while credible, had not demonstrated that she experienced past persecution on account of a protected ground. She also failed to show that any future harm would arise out of her membership in a specific social group or based on her political opinion. Because Petitioners were unable to meet the burden for asylum, they also failed to meet their burden for withholding of removal.

Petitioners appealed the IJ's decision to the BIA, arguing that the IJ erred in finding them ineligible for asylum, withholding of removal, and protection under the CAT. Additionally, they moved to remand for further proceedings based on their prior counsel's ineffective assistance. The BIA dismissed Petitioners' appeal and denied their motion to remand. With respect to asylum, the BIA found that the severity of the harm that Lopez De Villeda experienced—threats from the woman at Rafael's funeral and from the gang members who came to the family's house before Rafael died—did not rise to the level of past persecution. Moreover, the BIA concluded, there was no indication that the harm Lopez De Villeda experienced was based on a protected ground. Because Lopez De Villeda did not establish past persecution, the BIA determined that she was not entitled to a presumption of a well-founded fear of future persecution. It further determined that she failed to independently establish that the harm she feared was based on her membership in a particular social group or because of her political opinion. The BIA also concluded that Petitioners did not meet their burden as to withholding of removal and were not eligible for protection under the CAT.

With respect to the motion to remand based on ineffective assistance of counsel, the BIA concluded that Lopez De Villeda failed to demonstrate that she was prejudiced by prior counsel's alleged actions or inactions. Specifically, the BIA determined that: (1) the IJ had extensively considered *Matter of L-E-A-* in the decision and Lopez De Villeda did not demonstrate

that she was prejudiced by prior counsel's failure to file a brief on that case;[3] (2) there was no indication how Lopez De Villeda's sons' testimony, or expert testimony, would have altered the IJ's decision; (3) prior counsel's decision to not aggressively pursue Lopez De Villeda's political opinion claim was an "informed, tactical choice, which was reasonable under the circumstances;" and (4) no evidence was presented to show that Lopez De Villeda would be entitled to relief or protection if she had met with her attorney more frequently to prepare for the merits hearing. Petitioners timely filed a petition for review of the BIA's order.

## II. DISCUSSION

### 1. Asylum and Withholding of Removal

The BIA's factual findings are reviewed for substantial evidence,[4] and its legal conclusions are reviewed de novo.[5] With respect to factual issues, reversal is warranted only if "the evidence was so compelling that no reasonable factfinder could conclude against it."[6] "The errors or other failings of the immigration judge's opinion are considered only if they have some impact on the BIA's decision."[7]

The Immigration and Nationality Act authorizes the Attorney General to grant asylum to a "refugee," which the statute defines as any

---

[3] In *Matter of L-E-A-*, the BIA held that immediate family members may be recognized as "particular social groups," but the applicant (L-E-A-) had failed to establish a nexus between that social group and the persecution he faced and feared. 27 I & N Dec. 40, 43–47 (BIA 2017).

[4] *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009).

[5] *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012).

[6] *Wang*, 569 F.3d at 537.

[7] *Abdel-Masieh v. I.N.S.*, 73 F.3d 579, 583 (5th Cir. 1996).

No. 19-60513

person "who is unable or unwilling to return" to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."[8] An applicant for asylum must demonstrate that one of these five enumerated characteristics "was or will be at least one central reason for persecuting the applicant."[9] To qualify for withholding of removal, meanwhile, an applicant "must demonstrate a clear probability of persecution upon return."[10]

We conclude that the BIA's finding that Petitioners have not demonstrated that they suffered past persecution, or established the requisite nexus based on either membership in a particular social group or political opinion, is supported by substantial evidence. An applicant for asylum must personally establish persecution, and the past persecution of family members, like Rafael, cannot be imputed to Petitioners.[11] With respect to past persecution, Petitioners have proven, at most, that they suffered several relevant incidents of harassment, intimidation, and economic extortion unaccompanied by physical harm or a significant deprivation of liberty.[12]

---

[8] 8 U.S.C. § 1101(a)(42)(A). "Persecution" encompasses "infliction of suffering or harm, under government sanction, upon persons who differ in a way regarded as offensive (*e.g.,* race, religion, political opinion, etc.), in a manner condemned by civilized governments." *Abdel-Masieh*, 73 F.3d at 583 (internal quotation marks and citation omitted).

[9] 8 U.S.C. § 1158(b)(1)(B)(i).

[10] *Roy v. Ashcroft*, 389 F.3d 132, 138 (5th Cir. 2004) (internal quotation marks and citation omitted).

[11] *See Morales v. Sessions*, 860 F.3d 812, 816 (5th Cir. 2017).

[12] *See Eduard v. Ashcroft*, 379 F.3d 182, 187 n.4 (5th Cir. 2004) (quoting *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 390 (6th Cir. 1998)) (Persecution "'requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty.'"); *Ramirez-*

No. 19-60513

Moreover, substantial evidence supports the BIA's conclusion that Petitioners have not satisfied the persecution element by demonstrating that they have a reasonable, well-founded fear of future persecution if they returned to El Salvador. Since Petitioners left El Salvador, none of their family members have received any threats or been physically harmed. There also is not any evidence of Petitioners being informed of any threats against them should they return. Although Lopez De Villeda testified that she had heard that "people have been murdered" for refusing to provide transportation to gang members, Lopez De Villeda has provided little detail to explain why these individuals are like Petitioners or how this would still apply given that she is not a member of the transportation cooperative herself.

Finally, substantial evidence supports the BIA's conclusion that even if Petitioners had demonstrated that the harm they suffered rose to the level of persecution, they still failed to establish that "one central reason" for the persecution was either their membership in a particular social group or Lopez De Villeda's "political opinion" against gangs.[13] Lopez De Villeda's testimony makes it clear that the gang members were motivated by economic and criminal concerns rather than Petitioners' membership in a social group or Lopez De Villeda's alleged political opinion.

---

*Meija v. Lynch*, 794 F.3d 485, 493 (5th Cir. 2015) (internal quotation marks and citation omitted) ([T]his court "do[es] not recognize economic extortion as a form of persecution under immigration law."); *Tesfamichael v. Gonzales*, 469 F.3d 109, 116 (5th Cir. 2006) (citation omitted) ("Persecution cannot be based on 'mere denigration, harassment, and threats.'").

[13] To the extent that Petitioners are claiming that they established the nexus based on their membership in the particular social group of "the nuclear family of a transportation cooperative member," this proposed social group was neither urged before the IJ nor the BIA. Accordingly, it is an unexhausted issue over which this Court lacks jurisdiction. *See Hernandez-De La Cruz v. Lynch*, 819 F.3d 784, 786 (5th Cir. 2016).

No. 19-60513

Accordingly, the BIA did not err in finding that Petitioners failed to demonstrate that they were entitled to asylum or withholding of removal.

### 2. Ineffective Assistance of Counsel

"Although an [applicant] has no Sixth Amendment right to effective counsel during removal proceedings, this court has repeatedly assumed without deciding that an [applicant]'s claim of ineffective assistance may implicate due process concerns under the Fifth Amendment."[14] To succeed on such a claim, the applicant must demonstrate that counsel's unprofessional actions were substantially prejudicial to her case.[15] Demonstrating prejudice requires Petitioners to "make a prima facie showing" that they would have been entitled to the relief they sought— asylum and withholding of removal—absent counsel's deficient performance.[16]

Petitioners argue that they were prejudiced by prior counsel's failure to: (1) call other fact witnesses, such as Lopez De Villeda's sons, or expert witnesses to testify at the removal hearing; (2) more aggressively pursue the asylum claim based on political opinion; and (3) file a legal brief on *Matter of L-E-A-* as it relates to their asylum claim. With respect to the first claim, Petitioners have not described or proffered the testimony or evidence that additional fact or expert witnesses would have shown that Lopez De Villeda could not have shown through her testimony. At the hearing before the IJ, Lopez De Villeda provided testimony as to all the threats and harm she experienced. Moreover, Petitioners have offered no evidence to indicate that the gang members were aware of any political opinion expressed by Lopez De

---

[14] *Mai v. Gonzales*, 473 F.3d 162, 165 (5th Cir. 2006) (citation omitted).

[15] *See Gutierrez-Morales v. Homan*, 461 F.3d 605, 609 (5th Cir. 2006).

[16] *See Miranda-Lores v. I.N.S.*, 17 F.3d 84, 85 (5th Cir. 1994).

Villeda. Therefore, prior counsel's failure to argue this claim more aggressively does not establish prejudice. Additionally, the IJ considered *Matter of L-E-A-* extensively in its decision, a fact that the BIA noted in its own order. Both the IJ and BIA assumed that Petitioners' proposed social group of immediate family members was cognizable, which means it was never at issue in this case. Petitioners thus failed to demonstrate how prior counsel's failure to file a legal brief on *Matter of L-E-A-* was substantially prejudicial to Petitioners. Finally, Petitioners' appellate counsel did not raise the particular social group of "the nuclear family of a transportation cooperative member" before the BIA, which makes this issue unexhausted.[17]

Accordingly, Petitioners have not made the requisite showing on their claims that prior counsel was ineffective, and we affirm the BIA's denial of Petitioners' motion to remand.

### III. CONCLUSION

For the foregoing reasons and those stated by the BIA in its order dated June 26, 2019, the BIA's order dismissing Petitioners' appeal of the denial of their request for asylum, withholding of removal and protection under the CAT, and the BIA's order denying Petitioners' motion to remand, are AFFIRMED.

---

[17] *See Hernandez-De La Cruz*, 819 F.3d at 786.