FILED
United States Court of Appeals
Tenth Circuit

July 9, 2021

Christopher M. Wolpert
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

KAREN ABIGAIL ROMERO-DE
GUZMAN; K.A.G.-R.,

Petitioners,

v.

MERRICK B. GARLAND, United States
Attorney General,*

Respondent.

No. 20-9540
(Petition for Review)

_____

## ORDER AND JUDGMENT**
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **BACHARACH**, Circuit Judges.
_____

Karen Abigail Romero-de Guzman and her minor daughter are natives and

citizens of El Salvador who entered the United States without permission. An

---

\* On March 11, 2021, Merrick B. Garland became Attorney General of the
United States. Consequently, his name has been substituted for William P. Barr as
Respondent, per Fed. R. App. P. 43(c)(2).

\*\* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

immigration judge (IJ) found them removable and ineligible for asylum, withholding of removal, or protection under the Convention Against Torture (CAT), and ordered that they be returned to their home country. The Board of Immigration Appeals (BIA) dismissed their appeal from the IJ's order. They now petition for review of the BIA's decision. We have jurisdiction under 8 U.S.C. § 1252(a), and we deny the petition.

## I. BACKGROUND & PROCEDURAL HISTORY

Romero and her daughter entered the United States without permission in July 2014. Border Patrol agents soon apprehended them and the government began removal proceedings. Romero conceded removability and applied for asylum, withholding of removal, and CAT protection. Romero's daughter did not separately petition for relief. To the extent permitted by law, her claims are entirely derivative of her mother's. We will therefore refer to Romero as if she is the only petitioner.

An immigration judge (IJ) denied all forms of relief and ordered that Romero be removed to El Salvador. She appealed to the BIA, which affirmed in all respects in a single-member summary disposition. She then petitioned this court for review (No. 15-9546).

Shortly after she filed her opening brief in that original appeal, the government moved to remand the case to the BIA so that, in the exercise of its prosecutorial discretion, the case could be administratively closed. We granted that motion in September 2016 and the BIA then administratively closed Romero's proceedings.

In July 2017, the government moved the BIA to reopen proceedings against

2

Romero. The BIA granted the motion and gave the parties an opportunity to file supplemental briefs. Romero did not file a supplemental brief.

In March 2020, the BIA again affirmed the IJ's decision in Romero's case in a single-member decision. This latest decision—the agency's final decision in this matter—incorporates the BIA's previous (June 2015) decision by reference and summarily repeats much of the earlier decision's analysis and conclusions.

We provide additional background as it becomes relevant to the various issues addressed below.

## II.    STANDARD OF REVIEW

A single-member BIA order "constitutes the final order of removal" and "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.* For example, we will consult the IJ's decision "where the BIA incorporates by reference the IJ's rationale or repeats a condensed version of its reasons while also relying on the IJ's more complete discussion," or "where the BIA reasoning is difficult to discern and the IJ's analysis is all that can give substance to the BIA's reasoning in the order of affirmance." *Id.*

"[W]here the BIA determines a petitioner is not eligible for relief, we review the decision to determine whether the record on the whole provides substantial support for that determination." *Id.* In so doing, we must treat "administrative

findings of fact [as] conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## III. ANALYSIS

### A. Due Process

We first address an argument that the agency proceedings denied Romero due process.

#### 1. Relevant Background

As described above, the BIA granted the government's motion to reopen removal proceedings in 2017. It then set a schedule for the parties to file supplemental briefs and twice reissued that schedule (extending the deadlines each time) due to administrative errors.

Upon receiving the BIA's final, corrected briefing schedule, Romero requested and received an extension of time to file her brief. Her new deadline was July 2, 2019. She filed nothing on that date. Two weeks later, the government moved for summary affirmance, noting that Romero had not filed anything. The BIA issued its final decision in March 2020, noting that Romero had "not submitted a brief or responded to the revised briefing schedule." R. at 3.

#### 2. Romero's Argument

Romero says her attorney "was not served with any decisions by the [BIA] subsequent to the remand from the Tenth Circuit" and she suffered prejudice from not being able to file a supplemental brief. Pet'r Opening Br. at 31. But the record shows that Romero's attorney received the briefing schedule, asked for an extension

of time, and was granted that extension. So the claim that her attorney did not receive "any" BIA decisions after our remand is false. And Romero does not complain that her attorney failed to receive the relevant order granting an extension of time for her supplemental brief. We therefore reject her due process argument as unsupported by the record.

**B.      Asylum**

We next turn to Romero's arguments that she qualifies for asylum.

1.      Relevant Background

An asylum applicant must prove that he or she is a "refugee." 8 U.S.C. § 1158(b)(1)(A). In this context, a "refugee" is a person unable or unwilling to return to his or her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id*. § 1101(a)(42)(A). Romero claims entitlement to asylum because she faces persecution in El Salvador "on account of . . . membership in a particular social group," *id.*, namely, "member[s] of [her husband] Angel Mauricio Guzman's nuclear family," R. at 864.[1]

_____

[1] The BIA currently interprets "particular social group" to include "members of an immediate family . . . depending on the facts and circumstances in the case." *Matter of L-E-A-*, 27 I. & N. Dec. 40, 42 (BIA 2017). In 2019, then-Attorney General Sessions overruled a portion of the BIA's *L-E-A-* decision and placed limits on the family-as-social-group theory that likely would prevent Romero from claiming her husband's nuclear family as her social group. *See generally Matter of L-E-A-*, 27 I. & N. Dec. 581 (A.G. 2019). But current Attorney General Garland recently vacated the 2019 decision "so as to return the immigration system to the preexisting state of affairs pending completion of the ongoing rulemaking process and the issuance of a final rule addressing the definition of 'particular social group.'" *Matter*

5

An immigration judge (IJ) held a hearing on this claim in January 2015. At the hearing, Romero testified that she came home one day to find her husband in bed with the girlfriend of a gang leader in their city. The gang leader apparently decided to take revenge by ordering gang members to rape Romero. They attempted as much early one morning as Romero walked from her bus stop to her house, telling her "that the situation was going to be an eye for an eye," R. at 426. Luckily, a dog started barking and a neighbor came out and shot a gun into the air and Romero's attackers ran away. But Romero continued to hear rumors of the gang's intention to rape her, so she fled to the United States. No other members of her husband's family have been targeted.

The IJ found that Romero's mistreatment was not on account of membership in a particular social group, but

> was clearly a matter of personal vengeance. . . . [The gang leader] was not interested in [Romero's] parents or siblings. . . . [The gang leader] was not interested in [Romero's] husband's siblings or parents or other relatives. [He] was clearly not interested in harming people because they belonged to [Romero's family]. . . . That fact is emphasized by the three assailants having indicated that they were acting in order to carry out the biblical law of "an eye for an eye." Considered strictly, that law would restrict the harm to a single individual, which would be [Romero].

---

*of L-E-A-*, 28 I. & N. Dec. 304, 305 (BIA 2021). Thus, at least for now, the 2017 *L-E-A-* decision is again good law and Romero can conceivably claim her husband's nuclear family as her social group.

*Id.* at 350. The IJ therefore denied asylum.[2]

Romero appealed to the BIA, which held (both in its June 2015 decision and its March 2020 decision) that the IJ had not clearly erred in finding that the gang was motivated by personal vengeance, not Romero's membership in a purported social group.

### 2. Persecutors' Motivations

Romero attacks the BIA's decision as if it upends the law of family-as-social-group, departing from BIA published precedent and putting the agency out of step with circuit court decisions (none from this court) on the same topic. We disagree. The BIA expressly deferred the question of whether Romero had pleaded "a cognizable particular social group," R. at 242 n.4, and went directly to the IJ's factual finding about the gang members' motivation—a finding it affirmed as not clearly erroneous.

We cannot say "any reasonable adjudicator would be compelled to conclude to

---

[2] In a motion to reconsider, Romero pointed out that she had defined her particular social group as the "nuclear family" of her husband, so it was error to make any findings based on whether extended family members had been threatened. R. at 311, ¶ 2. The IJ denied the motion for lack of jurisdiction because Romero had already appealed to the BIA. Before the BIA, Romero continued to define her social group as the "nuclear family" of her husband, R. at 264, but never faulted the IJ for considering whether extended family members had been attacked. Nor does she make that argument here. She has therefore failed to exhaust—and otherwise waived—the issue of whether attacks on extended family members (or lack thereof) are relevant evidence of her persecutors' motivations. *See Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) ("[A]n alien must present the *same specific legal theory* to the BIA before he or she may advance it in court."); *Lindstrom v. United States*, 510 F.3d 1191, 1196 (10th Cir. 2007) ("Arguments not raised in an opening brief are waived.").

7

the contrary." 8 U.S.C. § 1252(b)(4)(B). As the BIA and the IJ noted, the gang did not attack any other member of Romero's husband's family, and her attackers expressly stated that they were seeking "eye for an eye" revenge. This is substantial evidence that they were not motivated by Romero's membership in her husband's family, but by her unique status as the sexual partner of the man who "stole" the gang leader's sexual partner. We recognize the abhorrence of that motivation, but we further recognize that the asylum statute was not meant to grant relief to those suffering this kind of personal violence. *See Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003) ("[S]omething larger than personal hostility [must be] involved [to be eligible for asylum]."). We therefore affirm the BIA's finding that, whether or not Romero may claim her husband's family as a particular social group, the gang members did not target her because of her membership in that group, so she is ineligible for asylum.[3]

### 3.    Humanitarian Asylum

If an asylum applicant proves she suffered persecution based on a protected characteristic (*i.e.*, "race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42)(A)), but she cannot prove a well-founded fear of future persecution due to changed circumstances or her ability to relocate within that country, she may still be eligible for a form of relief

---

[3] The BIA also found Romero ineligible for withholding of removal. She does not argue that she remains eligible for withholding despite being ineligible for asylum. Accordingly, we do not reach the issue.

commonly known as "humanitarian asylum," *Krastev v. INS*, 292 F.3d 1268, 1279 (10th Cir. 2002) (internal quotation marks omitted). Romero argued for this form of asylum as well.

a. *Legal Standard*

Humanitarian asylum requires the applicant to "demonstrate[] compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution," or to "establish[] that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country." 8 C.F.R. § 1208.13(b)(1)(iii)(A)–(B). If the applicant demonstrates one of these grounds, a grant of asylum is in "the decision-maker's discretion." *Id.* § 1208.13(b)(1)(iii).

The first form of humanitarian asylum—compelling reasons not to return— requires "past persecution . . . so severe that it would so sear a person with distressing associations with his native country that it would be inhumane to force him to return there, even though he is in no danger of future persecution." *Krastev*, 292 F.3d at 1280 (internal quotation marks omitted). This is usually "reserved for situations such as the German Jews, the victims of the Chinese 'Cultural Revolution,' and survivors of the Cambodian genocide." *Id.* The second form of humanitarian asylum—risk of other serious harm—requires "harm that is not inflicted on account of race, religion, nationality, membership in a particular social group, or political opinion, but is so serious that it equals the severity of persecution." *Id.* at 1271 (internal quotation marks omitted).

9

b.      *Proceedings Before the Agency*

Romero's humanitarian asylum argument relied on two episodes of alleged persecution. First, she testified that her stepfather sexually abused her from age five to age sixteen (when she moved out). Moreover, her mother and grandmother refused to believe her accusations. This, she claimed, put her in a particular social group defined as "daughters of [her stepfather]," R. at 406, or "El Salvadoran children who lack sufficient familial protection and have been victims of sexual assault," R. at 473. Second, she testified about the attempted rape discussed above.

As to sexual abuse by her stepfather, the IJ never ruled that Romero's proposed social groups could not qualify as particular social groups under the asylum statute. The IJ instead ruled that Romero "may have suffered past persecution at the hands of her stepfather," but "the situation is not appropriate for a humanitarian grant, given that the persecution has ended, and [Romero] was able to safely relocate in El Salvador after that period of persecution." R. at 351. The IJ never addressed the further inquiries mandated by the humanitarian asylum regulation, namely, (i) whether this past persecution was so terrible that, despite changed circumstances, it would be inhumane to require Romero to return, or, barring that, (ii) whether she faced other serious harm (in this case, the possibility of revenge-motivated rape).

In her BIA appeal, Romero pointed out precisely this problem and explained why her stepfather's sexual abuse was a compelling reason not to return, or, at a minimum, that the gang leader's desire for revenge qualified as other serious harm. The BIA rejected the argument, reasoning that the sexual abuse perpetrated by

10

Romero's stepfather did not rise to the sort of extreme, systemic persecution that is normally required to satisfy the compelling-reasons prong of the humanitarian asylum regulation. In other words, the BIA undertook the compelling-reasons analysis itself. The BIA never addressed the other-serious-harm factor.

Romero then filed a motion to reconsider, pointing out that she might still have established the other-serious-harm prong, even if she had not established the compelling-reasons prong. In its order resolving the motion, the BIA "agree[d] that [its] decision did not address the argument that [Romero] will face 'other serious harm' upon return to El Salvador." R. at 138. But, it continued, "this oversight does not change the outcome because [Romero] has not established that she suffered past persecution on account of a protected ground." *Id.* In other words, the BIA concluded that the humanitarian asylum claim failed at the outset because Romero had not satisfied the threshold condition. *See* 8 C.F.R. § 1208.13(b)(1)(iii) (stating that humanitarian asylum is available to "[a]n applicant described in paragraph (b)(1)(i) of this section"); *id.* § 1208.13(b)(1)(i) (describing the relevant applicant as "an alien found to be a refugee on the basis of past persecution" not likely to repeat itself).

The BIA's final (March 2020) decision repeated the same reasoning, but added an alternative basis for denying relief: "Assuming that [Romero] established that the harm she suffered from her stepfather was due to a protected ground, she has not demonstrated that this harm was the particularly severe type of harm that supports a grant of humanitarian asylum." R. at 4. The BIA did not go on to analyze the

11

other-serious-harm prong.

c.      *Romero's Argument on Appeal*

The BIA potentially committed two errors. First, its finding that Romero has not established past persecution on account of a protected ground is arguably a forbidden factual finding at the appellate stage, considering that the IJ assumed persecution but made no finding on this issue either way, *cf.* 8 C.F.R. § 1003.1(d)(3)(iv)–(v) (limiting the BIA's factfinding authority). Second, the BIA's failure to examine the possibility of other serious harm appears to contradict the humanitarian asylum regulation.

Romero never makes the first argument. To be sure, she asserts that "[t]he IJ held that [she] had, in fact, suffered past persecution at the hands of her stepfather," Pet'r Opening Br. at 30, but she does not develop this into an argument that the BIA made an impermissible factual finding to the contrary.[4] She instead focuses on the BIA's *first* decision (from June 2015), where it resolved her humanitarian asylum claim by pointing out that her stepfather's sexual abuse was not the sort of persecution that one might claim under the compelling-reasons prong of the humanitarian asylum analysis. Romero interprets this as an implicit "finding" by the BIA "acknowledg[ing] [her] past harm," *id.*—by which she appears to mean that the BIA recognized her past persecution based on a protected ground. She then argues that the BIA erred because it did not go on to the other-serious-harm prong. But she

---

[4] Her argument appears to be overstated in any event. Again, the IJ *assumed* persecution by her stepfather, but made no finding to that effect.

12

fails to mention the BIA's *later* determination that she had "not established that she suffered past persecution on account of a protected ground," R. at 138.

The threshold for humanitarian asylum—whether for compelling reasons or the risk of other serious harm—is a finding of past persecution on account of a protected ground. The BIA found that Romero falls short of this threshold. Although potentially an impermissible appellate factual finding, Romero does not challenge it. Thus, any argument about subsidiary conditions of humanitarian asylum (such as a risk of other serious harm) is irrelevant. For this reason, we affirm the BIA's denial of humanitarian asylum.

### C.    CAT Relief

Finally, we address Romero's arguments that the BIA erred in its analysis of her eligibility for CAT relief.

#### 1.    Failure to Consider Willful Blindness

To obtain CAT relief, the torture in question must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Acquiescence includes "willful blindness." *Id.* § 1208.18(a)(7).

Romero says that the BIA failed to consider the possibility that the Salvadoran government would be willfully blind to what the gang would do to her if she returned, so the matter should be vacated and remanded for further consideration. She is mistaken. The BIA's original (June 2015) decision does not mention willful blindness, but its final (March 2020) decision holds that Romero has "not met her

13

burden to establish that it is more likely than not a public official . . . in El Salvador

will torture her, acquiesce in her torture, or be willfully blind to her torture by

others," R. at 5 (citation omitted). That decision also discusses the IJ's conclusions

as they relate to willful blindness. *See id.* Thus, Romero's willful blindness claim is

baseless.

### 2. Failure to Consider Totality of the Evidence

Romero next argues that the BIA failed to consider the totality of the evidence

regarding the Salvadoran government's alleged acquiescence to the gang violence she

fears she will experience if returned. Similar to her willful blindness argument, she

asks this Court to remand to the BIA to consider her claim under all the evidence.

Romero never identifies any evidence the BIA ignored, but she summarizes

three types of evidence that she views as favorable to her claim: (1) her testimony

about a relative who reported gang extortion to the police, and who was later

murdered; (2) her testimony about advice she received from a Salvadoran police

officer not to report the attempted rape; and (3) affidavits and country-conditions

information about the Salvadoran government's inability to control gangs.

Presumably this is the evidence she believes the BIA ignored, but the BIA explicitly

discussed items 2 and 3, and it further discussed the possibility that Salvadoran

police forces have been infiltrated by gang members, which implicitly addresses

item 1. *See* R. at 5 & n.3. So, to the extent her claim is merely that the BIA failed to

consider evidence, the record shows otherwise.

To the extent her claim is that the BIA clearly erred in its factual findings

14

about acquiescence, we disagree.  As the BIA noted, the country-conditions evidence shows that the Salvadoran government has had some success rooting out gang influence.  *See id.*  Although the evidence is equivocal, it does not fall below the substantial-evidence threshold.  In other words, we cannot say that "any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

For these reasons, we affirm the agency's denial of CAT relief.

## IV.   CONCLUSION

We deny the petition for review.

Entered for the Court

Mary Beck Briscoe
Circuit Judge