[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11909

Non-Argument Calendar

_____

CLAUDIA YOLIBETH PADILLA-MEJIA,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A205-340-416

_____

Before JORDAN, ANDERSON, and EDMONDSON, Circuit Judges.

PER CURIAM:

Claudia Padilla-Mejia ("Petitioner"), a native and citizen of Honduras, petitions for review of the order by the Board of Immigration Appeals ("BIA") affirming the decision of the Immigration Judge ("IJ"). The IJ's decision denied Petitioner's applications for asylum, for withholding of removal, and for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). No reversible error has been shown; we deny the petition.

## I.

Petitioner sought asylum and withholding of removal based on her alleged past persecution and fear of future persecution by gang members in Honduras. Petitioner says the gang's mistreatment was and would be "on account of" Petitioner's membership in two proposed particular social groups: (1) the "Mendoza Padilla family;" and (2) "as a mother of two male children from Olancho, Honduras." Petitioner also applied for relief under CAT.

Before the incidents involved in this case, Petitioner lived in Olancho, Honduras, with Jose Francisco Mendoza: Petitioner's boyfriend and the father of her child. In February 2010, members of the criminal gang "Maras" shot Mendoza in the shoulder after Mendoza refused to pay the gang "war taxes." Petitioner was not present during the shooting. Mendoza reported the incident to the

22-11909               Opinion of the Court               3

Honduran police.   Sometime later, Mendoza fled to the United States.

After Mendoza left Honduras, Petitioner began receiving -- through a family member -- threats from people she believed were members of the Maras gang.  Petitioner says the gang members targeted her as "revenge" because they believed Petitioner was involved in reporting them to the police.

In September 2011, Petitioner fled with her son[1] to Comayagua, Honduras.   While living in Comayagua, Petitioner remained unharmed and received no threats, but says she "lived in fear" that gang members would find her.  Petitioner left Honduras and entered the United States in March 2012.   Petitioner's son stayed in Honduras with Petitioner's mother.   No one in Petitioner's family -- including Petitioner's parents, brother, and son -- was threatened or harmed physically after Petitioner left Honduras.

Petitioner fears returning to Honduras because she says the gang members will try to kill her and her son.  Although it has been over a decade since Petitioner left Honduras, Petitioner says the gangs will continue to target her because they have "dedicat[ed] themselves to kidnapping and killing people."  According to Petitioner, the Honduran government turns "a blind eye" to gang

---

[1] Petitioner's oldest son was born in Honduras in July 2010.  Petitioner's second son was born in the United States in April 2015.

4                    Opinion of the Court                 22-11909

violence and is unable or unwilling to protect its citizens from criminal gangs due to high levels of corruption.

The IJ denied Petitioner's applications for relief.[2]  The IJ determined that the harm Petitioner suffered in the past did not rise to the level of persecution.  The IJ next concluded that Petitioner failed to demonstrate a well-founded fear of future persecution on account of her membership in a particular social group.  The IJ also found no evidence demonstrating that Petitioner more-likely-than-not would be tortured by, or with the acquiescence of, the Honduran government.

Petitioner appealed to the BIA.  The BIA affirmed the IJ's decision.  About Petitioner's application for asylum, the BIA agreed with the IJ's determination (1) that Petitioner suffered no past harm rising to the level of persecution; (2) that Petitioner was targeted based on the gang's perception that Petitioner was involved in reporting the gang to the police and, thus, Petitioner had not shown that her connection to the "Mendoza Padilla family" was a central reason for the claimed past harm or fear of future harm; and (3) that Petitioner's proposed social group of "mother of two male children from Olancho, Honduras" lacked the requisite particularity and social distinction to constitute a cognizable particular social group under the INA.  The BIA also agreed with the IJ's conclusion

---

[2] The IJ assumed that Petitioner's asylum application was timely-filed and assumed that Petitioner's testimony was credible.

that Petitioner failed to demonstrate eligibility for withholding of removal or for CAT relief.

## II.

We review only the decision of the BIA, except to the extent that the BIA adopts expressly the IJ's decision. *See Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). Because the BIA agreed expressly with parts of the IJ's reasoning in this case, we review the IJ's decision to the extent of that agreement. *See id.*

We review *de novo* the BIA's legal conclusions, including whether a proposed group qualifies as a "particular social group" under the Immigration and Nationality Act ("INA"). *See id.* Although our review is *de novo*, we defer to the BIA's interpretation of the phrase "particular social group" if the BIA's interpretation is reasonable. *See id.* at 404.

We review fact determinations under the "highly deferential substantial evidence test" whereby we "must affirm the BIA's decision if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*). We "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1027. To reverse a fact determination, we must conclude "that the record not only supports reversal, but compels it." *See Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

An asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence. *See* 8 U.S.C.

§ 1158(b)(1)(B); *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1286-87 (11th Cir. 2005).  A "refugee" means a person unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of" a protected ground, including "membership in a particular social group."  8 U.S.C. § 1101(a)(42)(A).

Substantial evidence supports the IJ's and the BIA's determination that the harm Petitioner suffered in the past -- verbal threats communicated to Petitioner through a family member -- did not rise to the level of persecution.  We have explained that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution."  *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations omitted) (concluding that phone calls threatening to kill petitioner if she did not stop her political activity and the bombing of petitioner's workplace did not rise to the level of persecution).

Substantial evidence also supports the IJ's and the BIA's conclusion that Petitioner failed to demonstrate a sufficient nexus between her mistreatment by gang members and her membership in the "Mendoza Padilla family."[3]

---

[3] On appeal, Petitioner argues that the IJ erred in relying on *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), *vacated, Matter of A-B-*, 28 I. & N. Dec. 307 (A.G. 2021).  We review the IJ's decision only to the extent it is adopted by the BIA.  *See Gonzalez*, 820 F.3d at 403.  Because the BIA did not adopt the portions of

22-11909                Opinion of the Court                7

To satisfy the "on account of" or "nexus" requirement, an applicant must demonstrate that a protected ground "was or will be at least one central reason for" persecution. *See* 8 U.S.C. § 1158(b)(1)(B)(i). "A reason is central if it is 'essential' to the motivation of the persecutor" and not merely "incidental, tangential, superficial, or subordinate to another reason for harm." *Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1286 (11th Cir. 2021).

We have distinguished "persecution of a family as a means to an unrelated end from persecution based on animus against a family *per se*." *See id*. 1287. "Where a gang targets a family only as a means to another end, the gang is not acting because of who the family is; the identity of the family is only incidentally relevant." *See id*.

The record does not compel the conclusion that Petitioner's relationship to Mendoza was an "essential" factor motivating the gang's targeting of Petitioner. The gang members shot Mendoza

---

the IJ's decision discussing *Matter of A-B-*, Petitioner's arguments about that case are not before us on appeal.

Petitioner also contends that she is entitled to a remand based on the BIA's reliance on *Matter of L-E-A-*, 27 I. & N. Dec. 40 (BIA 2017) ("*Matter of L-E-A- I*"), *vacated in part*, 27 I. &. N. Dec. 581 (BIA 2019) ("*Matter of L-E-A- II*"), *vacated*, 28 I. & N. Dec. 304 (A.G. 2021) ("*Matter of L-E-A- III*"). We disagree. To the extent the BIA cited *Matter of L-E-A- I*, it was for the general proposition that "the respondent must show that the family relationship is at least one central reason for the claimed harm." That proposition remains good law. *See Matter of L-E-A- II*, 27 I. & N. Dec. at 597 (leaving "undisturbed" the BIA's nexus analysis); *Matter of L-E-A- III*, 28 I. & N. Dec. at 305 (declining to address the BIA's nexus determination).

after Mendoza refused to pay the gang money.  The IJ and the BIA concluded reasonably that the gang members then targeted Petitioner because they believed she was involved in reporting the February 2010 shooting incident to the police.  That Petitioner had a family relationship to Mendoza was merely incidental.

We also see no reversible error in the IJ's and the BIA's determination that Petitioner's second proposed group was not cognizable under the INA.  To qualify as a "particular social group" under the INA, a group must -- among other things -- have sufficient social distinction, meaning the proposed group is "perceived as a group by society."  *See Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 242 (BIA 2014; *Matter of W-G-R-*, 26 I. & N. Dec. 208, 216 (BIA 2014).  Petitioner produced no evidence demonstrating that "mothers with two male children from Olancho, Honduras" are perceived by Honduran society as a distinct societal group.  Nor has Petitioner shown that her membership in this proposed group was or would be a central motivating factor for mistreatment.

The record compels no conclusion that Petitioner would be targeted for future mistreatment "on account of" a statutorily-protected ground.  Substantial evidence supports the IJ's and the BIA's determination that Petitioner is unentitled to asylum.  Because Petitioner has not satisfied her burden of establishing eligibility for asylum, she is unable to demonstrate eligibility for withholding of removal.  *See Forgue*, 401 F.3d at 1288 n.4.

About Petitioner's application for CAT relief, substantial evidence supports the IJ's and the BIA's determination that Petitioner

failed to make the requisite showing. To establish eligibility for CAT relief, an applicant must show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1242 (11th Cir. 2004). The applicant must also show that the torture would be inflicted by or with the acquiescence of the removal country's government. *Id*. "Acquiescence requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id*. (quotation omitted).

Petitioner makes no assertion that she suffered harm or fears harm inflicted directly by a government official. Nor has Petitioner shown that the police had prior knowledge of the gang's criminal activities -- including the 2010 shooting and the verbal threats to Petitioner -- and refused to intervene to stop them.

Petitioner presented some evidence of police corruption within Honduras. The U.S. Department of State's 2017 Country Report also shows, however, that the Honduran government has taken steps to combat police corruption. In particular, the government formed the Police Purge Commission, which had purged 4,445 officers from the ranks since its creation in April 2016. This record does not compel the conclusion that the Honduran government would acquiesce to Petitioner's torture by gang members.

The IJ's and the BIA's decision that Petitioner was unentitled to relief is supported by reasonable, substantial, and probative

evidence.  Nothing in the law or on this record compels us to reverse that decision.

PETITION DENIED.